**STATE of Maine**

**v.**

**Leslie THAYER.**

Supreme Judicial Court of Maine.

Sept. 21, 1971.

Joseph E. Brennan, County Atty., Portland, for plaintiff.

David C. Pomeroy, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

The Defendant was indicted and convicted of high and aggravated assault and battery in violation of 17 M.R.S.A. § 201,[1] from which conviction he appealed. The appeal raises a single issue, namely: In determining whether an assault and battery is of a high and aggravated nature, is evidence of an intent to commit a felony a proper consideration for the fact finder, particularly in view of 17 M.R.S.A. § 202?[2]

To reach the issue here involved in view of the facts of this case, it is necessary to review the history of our Assault and Battery Statute as well as the history of 17 M.R.S.A. § 202.

## ASSAULT AND BATTERY

On March 15, 1821, the first Maine Legislature approved an act which provided for a penalty of not more than $5.00 for "all assaults and batteries that are not of a high and aggravated nature." Laws of Me., (1821) ch. LXXVI, § 1. In the same year and prior to the above enact-

1. "Whoever unlawfully attempts to strike, hit, touch or do any violence to another however small, in a wanton, willful, angry or insulting manner, having an intention and existing ability to do some violence to such person, is guilty of an assault. If such attempt is carried into effect, he is guilty of an assault and battery. Any person convicted of either offense, when it is not of a high and aggravated nature, shall be punished by a fine of not more than $100 or by imprisonment for not more than 6 months, or by both. When the offense is of a high and aggravated nature, the person convicted of either offense shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 5 years, when no other punishment is prescribed."

2. "Whoever commits an assault with intent to commit a felony, which has not been otherwise described or for which no penalty has been provided, shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 5 years."

ment, assaults with intent to murder and maim (ch. II, § 5) and rape (ch. III, §§ 3 and 4) had been prohibited. On March 19, 1821, assault with intent to steal was made a criminal act (ch. VII, § 2).

In the 1841 revision, ch. 154, §§ 33 and 34, assault and battery was defined in nearly the same language as is now found in 17 M.R.S.A. § 201 but the offense was then considered a misdemeanor, and declaratory of the common law. Rell v. State (1939), 136 Me. 322, 9 A.2d 129.

By Chapter 82, P.L. of 1872, assault and battery was made a felony by giving the Court discretionary authority to punish by imprisonment in the Maine State Prison. It retained this provision until 1933 when the Legislature distinguished between types of assault and battery by restricting the power of sentencing for nonaggravated assaults and batteries to the county jails. P.L.1933, ch. 92, § 6. This is now expressed in 17 M.R.S.A. § 201 (see n. 1).

## ASSAULT WITH INTENT TO COMMIT A FELONY

R.S. 1841, ch. 154 § 31 proscribed the following conduct:

"If any person shall assault another with intent to commit any felony or crime, punishable with imprisonment in the state prison, *where the punishment for such assault is not otherwise herein before prescribed*, he shall be punished by imprisonment in the state prison, not more than five years, or by fine, not exceeding five hundred dollars, and by imprisonment in the county jail not more than one year." (Emphasis added.)

§§ 29 and 30 of this act prohibited assaults with intent to murder, kill, maim, rob, steal, commit arson and commit burglary. We construe the 1841 Act as authorizing an indictment for assault with intent to commit felonies other than those described in §§ 29 and 30. This statute has remained in effect in essentially the same form ever since and is now found in 17 M.R.S.A. § 202.

\* \* \*

In defining the words "high and aggravated" to the Jury, the Presiding Justice used these words:

"It may result from the design, as I say, or purpose of the assault. If the assault was for the purpose of committing an offense, larceny from the person, or for the purpose of committing a felony, or for the purpose of committing a robbery from the person, if you so find in any given case that that was the design and purpose of the assault, if that was the end to be obtained and brought about by the assault, that is a question of fact for you, if you so find. And if you did so find, you might properly find it was of a high and aggravated nature depending upon how you judge the evidence. \* \* \* "

No objections were noted to the instructions as required by M.R.Crim.P., Rule 30 (b) but the Defendant seeks to invoke the exceptions stated in State v. Smith (1944), 140 Me. 255, 37 A.2d 246, and recently cited with approval in State v. Simpson (Me. 1971), 276 A.2d 292. Was this instruction, then, a highly prejudicial error in law or was it so plainly wrong and the point involved so vital that the verdict must have been based upon a misconception of the law?

### FACTS

The following excerpts from the testimony of the victim of the assault are factually descriptive of the episode and bring the issue into focus:

"Q What took place after he stopped you?

A As I say, he locked his arm around me; then he asked me for a quarter; and as—I yanked my arms away from him and I said, 'Get out of here.'

Q Then what did he do?

A When I said that, he just poked me in the face. I went out on to High Street.

\*　\*　\*　\*　\*　\*

Q  Then what happened?

A  Then I came back on to the side-walk again.

\*　\*　\*　\*　\*　\*

Q  What did he do next, if anything?

A  He says: 'Let me have what—.' He says: 'Let me have what money you've got.'

Q  What did you do then?

A  I reached in my pocket and gave him what change I had.

Q  How much was it, do you know?

A  Oh, around 75 or 80 cents; no bills at all.

Q  Then what took place?

A  When I passed him the change, then he hit me again in the side.

Q  What did he use to hit you in the side with?

A  Just his fist."

A bystander was an eye witness to these events and his testimony was in essential agreement with that of the victim. The Defendant did not elect to testify, nor was any other evidence offered by the defense.

The Defendant then made an appropriate motion to reduce the charge contained in the indictment to one of simple assault and battery, leaving the commission of the reduced crime to the Jury. In denying the motion the Justice made this statement:

> "Motion is denied. I am convinced that not only is there evidence of assault, aggravated assault, but actually there is sufficient evidence to find this man guilty of assault and robbery from the person. \* \* \*"

It is apparent that Maine has had a prohibition since 1841 against assaults with intent to commit specific felonies and a prohibition against an assault to commit any felony not otherwise specified, coexistent with the Assault and Battery Statute. Maine classified assault and battery as a felony for nearly one hundred years, and the history discloses that the Legislature gave the sentencing Justice discretion over the sentence to be imposed on all assaults and batteries between 1872 and 1933 when, as we have shown, the authority to punish by imprisonment in the Maine State Prison was restricted to those assaults and batteries of a high and aggravated nature. During this period the Legislature retained the various statutes prohibiting assaults with intent to commit specific crimes as well as the general statute which is now 17 M.R.S.A. § 202.

Assaults have been traditionally included in the more serious offense of assault with intent to kill and murder; State v. Henry (1904); 98 Me. 561, 57 A. 891; State v. Cuccinello (1957), 152 Me. 431, 133 A.2d 889, and have been considered as being included in graver types of criminal conduct such as murder, manslaughter, rape and robbery. State v. Ferris (Me.1969), 249 A.2d 523. This practice is general in the United States. 6 Am.Jur.2d, Assault and Battery § 57.

Our judicial history covering a period of one hundred fifty years is devoid of any interpretation of legislative intent to supersede the crime of assault when the facts of any given case justify the inference that the assault was committed with a specific criminal intent to commit a felony.

We do not interpret the 1933 amendment of the assault statute as any indication of legislative intent to vary the traditional definition of the term "high and aggravated" which, at common law, could be demonstrated by proof of an intent to commit a felony. State v. Bey (1965), 161 Me. 23, 206 A.2d 413.

> "The common law definition of an offense will be applied where a statute creating an offense refers to it by its common-law name, without further definition. \* \* \*" 21 Am.Jur.2d, Criminal Law § 13. See also State v. Pratt (1955), 151 Me. 236, 116 A.2d 924.

17 M.R.S.A. § 201 is declaratory of the common law. State v. Bey, supra. Therefore, the Appellant's argument that § 202

**318**

supersedes, or limits, § 201 where an intent to commit a felony is used to prove an aggravated assault, is without support. In fact, the 1933 amendment, being the most recent indication of legislative intent, indicates a legislative retention of all of the common law elements of high and aggravated assault and battery.

 The same facts may constitute a violation of more than one statute, and each may be punished independently. State v. Lindsey (Me.1969), 254 A.2d 601. A fortiori, the facts in support of assault with intent to commit a specific felony may also serve as the basis for prosecuting one for an aggravated assault and battery. Under such circumstances it is essential to retain the traditional definition of the words "high and aggravated," which has included as a relevant element an intent to commit a felony. State v. Bey, supra.

We conclude that the instruction given the Jury was correct and the verdict is completely supported by the record.

The entry is

Appeal denied.

POMEROY, J., did not sit.