Ronald G. FULLER

v.

STATE of Maine et al.

Supreme Judicial Court of Maine.

Oct. 18, 1971.

Pierce, Atwood, Scribner, Allen & Mc-Kusick, by Peter L. Murray, Portland, for plaintiff.

Garth K. Chandler, Asst. Atty. Gen., Augusta, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Petitioner has appealed to this Court the decision of a single Justice denying him post-conviction habeas corpus relief under 14 M.R.S.A. §§ 5502 et seq.

Before the single Justice the pertinent facts were stipulated and the issues clarified and defined. An extensive pre-trial order was entered embodying the stipulated facts and the delineation of issues. The cause was thereupon submitted to the presiding Justice for his decision on a record constituted by the pleadings (petition for habeas corpus, as amended, and answer of the State to the amended petition), various exhibits and the Pre-Trial Memorandum and Order.

This record before the presiding Justice, which is the record before us, reveals that on January 19, 1967 the petitioner, Ronald G. Fuller, as the result of a juvenile proceeding conducted before the Lincoln County District Court (acting as a juvenile court), had been committed, as a juvenile offender, to the Men's Correctional Center at South Windham, Maine. In the juvenile proceedings petitioner had been uninformed of his right to be provided with counsel at public expense and had been unrepresented by counsel.

On April 18, 1968 petitioner was charged in the Superior Court by an information reading as follows:

"that on the 17th day of March, 1968, in the Town of Windham, County of Cumberland, and State of Maine, the above named defendants, BARRY G. DAY and RONALD G. FULLER, did then and there make an assault upon one Clement Begin with a deadly weapon, to wit: a steel utility knife, 'Stanley No. 199', held in the hand of the said RONALD G. FULLER, and him, the said Clement Begin, then and there feloniously did strike, beat, bruise, wound, and ill-treat, said assault and battery being of a high and aggravated nature."

The accusation was based upon an incident which had occurred on March 17, 1968 when the petitioner, while confined under the original Juvenile Court commitment at the Men's Correctional Center, had perpetrated an assault and battery upon a guard at the institution—one, Clement Begin, the same person mentioned by name in the information.

To the information petitioner, represented by court-appointed counsel, had pleaded guilty and, on April 18, 1968, was sentenced, and committed, to serve one and one-half to five years at the State Prison in Thomaston. The penalty is within the statutorily prescribed maximum for the crime of assault and battery when it is in nature "high and aggravated", but it is in excess of the maximum limitation of punishment imposed by statute (six months) when the offense is in nature other than "high and aggravated."

The "Judgment and Commitment" under which petitioner was committed to the State Prison recited:

"It is adjudged that the defendant has been convicted on his plea of Guilty of the offense of Assault and Battery as charged by Information * * *."

and also

"It is adjudged that the defendant is guilty as charged and convicted."

The appeal of petitioner raises three points for consideration and decision.

The first claim of petitioner is that his confinement in the Men's Correctional Center was illegal because he had lacked the benefit of counsel in the juvenile pro-

ceedings, in violation of the requirements of the decision of In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966), and that, therefore, his use of reasonable force to free himself from the illegal imprisonment itself, or from the burdens of any supervision incident to it, was lawful.

This argument of petitioner fails. It is founded upon an underlying premise that since petitioner's confinement at the Men's Correctional Center resulted from a juvenile proceeding in which petitioner's constitutional right to counsel had been violated, the confinement was without lawful operative effect while it was continuing. The premise is erroneous. Even if the principles of the decision of In Re Gault had been violated in the proceedings from which petitioner's confinement at the Men's Correctional Center originated, the confinement was of lawful effect until such time as an appropriate judicial procedure might adjudicate its invalidity. This principle emerges unequivocally from the decisions in the recent cases of Collins v. State, Me., 262 A.2d 443 (1970) and Chapman v. State, Me., 250 A.2d 696 (1969) in which this Court, in turn, relied upon the earlier cases of Beaulieu v. State, 161 Me. 248, 211 A.2d 290 (1965) and Hamner v. State, Me., 223 A.2d 532 (1966).

Although on their particular facts both *Chapman* and *Collins* were concerned with the crime of escape rather than the offense of assault and battery, they evaluated the specific question of whether an illegality in the original sentence to the Men's Correctional Center (even if the illegality be of constitutional dimension) vitiates the lawfulness of the confinement. *Collins* is definitive in holding that the defect in the conviction from which the confinement flowed fails to nullify, with absolute effect, the lawful continuity of the confinement

while it is an operative fact. As was said in *Collins*:

"* * * the sentence which he was serving at the time of his escape was only voidable and not void. A prisoner's right is to test the validity of his commitment by legal process and not by escape." (262 A.2d p. 443)

In *Chapman* it was emphasized that even though petitioner

"had the right to test the validity of his original conviction and confinement by judicial procedure * * *. A valid judgment and commitment by a court of competent jurisdiction were in full force and effect * * *." (250 A.2d p. 697)

*until* a court adjudication would establish the unlawfulness of the confinement.

In the present case, therefore, regardless of whether constitutional requirements of In Re Gault had been violated when petitioner was found to be a juvenile offender and was committed to the Men's Correctional Center, his confinement at the Men's Correctional Center had been continuing *as a lawful operative fact*. Petitioner was entitled to test the validity of the confinement by legal process which would terminate the continuity of the lawfulness of the confinement. Self-help, however, was lawfully unavailable for such purpose.

The attack on the guard at the Men's Correctional Center—whether undertaken as part of an effort to escape, or to resist supervision incident to, a confinement imposed as result of violations of the principles of In Re Gault—lacks legal justification.

Petitioner next argues that he was charged and convicted under the wrong statute. He maintains that 34 M.R.S.A. § 807,[1] which is specifically concerned with

---

1. As of March and April of 1968, the months here involved in which petitioner had committed the offense charged under 17 M.R.S.A. § 201 and had pleaded guilty and been convicted, sentenced and committed to the State Prison, 34 M.R.S.A. §

807 had been amended (by P.L.1967, c. 391, § 13) to read as follows:
   "When any inmate escapes from the center, the superintendent shall take all proper measures for his apprehension.

the criminality, as well as other aspects, of an assault and battery upon a guard, and committed by an inmate, of the Men's Correctional Center, excludes the applicability of 17 M.R.S.A. § 201—the statute which deals generally with the criminality of assaults and assaults accompanied by batteries.

This issue—of whether one statute which fails in express terms to deny the effective force of another statute in whole or in part has, nevertheless, accomplished such result by implication—has been considered in multitudes of cases in which numerous principles have been developed. It is important to emphasize, however, that the fundamental nature of the inquiry is the ascertainment of the overall legislative design. In this context, then, it will be recognized that no single factor will necessarily be absolutely controlling under all circumstances. Furthermore, while cases will often refer to, and apply, various principles of statutory interpretation, the emphasis must remain that such rules are utilized only as aids and guides rather than as controlling determinants.

The inquiry which confronts us cannot, therefore, be undertaken correctly by a mechanical, routine, rigid, or automatic adoption of any factors, single or conglomerate, which might have been held to be controlling in any other situation. We must examine all of the features characterizing the subject-matter presently before us recognizing, as was emphasized in State v. London, 156 Me. 123, 162 A.2d 150 (1960) that:

"The fundamental rule of statutory construction is the legislative intent. * * * It applies with equal force to the establishment or denial of a repeal by implication." (p. 126, 162 A.2d p. 152)

Approaching the issue in this vein, we conclude that the Legislature has failed to manifest a design that 17 M.R.S.A. § 201, which is applicable in express terms to the assault and battery involved in

"Whenever any inmate of the center escapes therefrom, or forcibly attempts to do so or assaults any officer or other person in the government thereof, the superintendent may certify that fact on the judgment and order of commitment, with recommendation that said person be transferred to the State Prison and present it to the commissioner for his approval. Upon approval of said recommendation by the commissioner, said inmate shall be transferred from the center to the State Prison, where he shall serve the remainder of the term for which he might otherwise be held at the center, or he may be punished by imprisonment in the State Prison for any term of years. This section as it relates to the authority to transfer shall apply only to those persons committed to the center for a felony. Upon conviction under this section the term then being served at the center shall terminate and said inmate shall begin immediately to serve the sentence imposed under this section. Any prisoner transferred under section 705 who escapes from the center or forcibly attempts to do so, or assaults any officer or other person in the government thereof, shall be punished upon conviction as provided in section 710. Prosecution under this section may be instituted in any county in which said person may be arrested or in the County of Cumberland but in such cases the cost and expenses of trial shall be paid by the county from which said person was originally committed, and payment enforced as provided in the following paragraph.

"Whenever any inmate of the center, not having been sentenced thereto by a court of the county wherein such center is situated and established, shall be convicted in such county of any misdemeanor or felony committed while an inmate of the center, or of an escape therefrom the cost and expense of trying such convicted inmate, and of his maintenance after conviction and sentence, if to the county jail of such county, shall be paid by the county from which the said convicted inmate was sentenced. The costs and expenses of such trial shall, in the first instance, be paid by the county wherein the center shall be established, whose commissioners are thereupon authorized to draw their warrant upon the treasurer of the county, from which said convicted inmate was sentenced to the center, for the amount paid by said county wherein the center is established, for said costs and expenses which warrant it shall be the duty of the treasurer upon whom it may be drawn to pay forthwith."

the present case[2] is to be deemed repealed, pro tanto, by implication by the enactment of 34 M.R.S.A. § 807 and its provisions dealing with assaults upon guards at the Men's Correctional Center. We decide that as of March 17, 1968 (the date of the present assault and battery) and April 18, 1968 (the date of the present information), and despite the provisions of 34 M.R.S.A. § 807, an information against petitioner could properly be brought under 17 M.R.S.A. § 201.[3]

To support his contention of a repeal by implication petitioner argues that 34 M.R.S.A. § 807

"* * * provides an administrative procedure for transferring prisoners who have committed assaults upon guards at the Men's Correctional Center to the State Prison and also provides for punishment for such inmates at the State Prison for any term of years. A specific venue and prosecution procedure is set forth in that section."

Relying upon these alleged special and unique factors of 34 M.R.S.A. § 807 petitioner asserts:

"It is obvious that the Maine Legislature enacted that specific section governing prison behavior and prescribing a special and different penalty for assault upon a Men's Correctional Center guard to displace 17 M.R.S.A. § 201 to the extent that the other section would have otherwise been applicable. * * * It would be inconsistent for the Legislature to enact a special code of behavior for the Correctional Center unless it had intended that that code exclusively govern. * * *"

We disagree. We decide that the features of 34 M.R.S.A. § 807 (as the statute read in March and April of 1968) to which petitioner adverts fail to support a broad conclusion that there is "inconsistency" in allowing a special code of behavior for the Men's Correctional Center, together with the delineation of a special criminal sanction for a violation of that code, to be co-existent, co-operative and co-effective with, rather than exclusive of, the general criminal offense of assault and battery as treated by the Legislature in 17 M.R.S.A. § 201.

It is well and long established that, in the abstract, the law permits one matrix of facts to generate, in terms of its legal consequences, more than one criminal offense. State v. Farnham, 119 Me. 541, 112 A. 258 (1921); State v. Lindsey, Me., 254 A.2d 601 (1969) and State v. Thayer, Me., 281 A.2d 315 (1971). Hence, there is neither inconsistency nor manifest incongruity in an initial conclusion that proof of the facts that petitioner "did strike, beat, bruise, wound and ill-treat," another person— (even if, in addition, it be shown that such other person was a guard at the Men's Correctional Center and that the attack occurred while petitioner was an inmate of that institution)—can be, without repugnance to established general or particular principles of law, a criminal offense under both 17 M.R.S.A. § 201 and 34 M.R.S.A. § 807.

2. 17 M.R.S.A. § 201 had been enacted long prior to 1919—the year in which the statute relating to escapes from the Men's Correctional Center became law (P.L.1919 c. 182 § 10)—and 1925—the year of the amendment which included assaults on guards (P.L.1925 c. 186 § 1).

3. The history of the various enactments which have culminated in the present language of 17 M.R.S.A. § 201 has most recently been examined by this Court in State v. Thayer, Me., 281 A.2d 315 (September 21, 1971).

It is to be emphasized that the present opinion which concerns the Maine law as it existed on March 17, 1968 (the date of the assault and battery) and April 18, 1968 (the date of the information) suggests no conclusion as to the effects of (1) legislative repeal in 1969 of 34 M.R.S.A. § 807 and the substitution for it of an entirely new section (P.L.1969 c. 346 § 5) which now continues to appear in the Revised Statutes as 34 M.R.S.A. § 807, or (2) of the amendments to the new 34 M.R.S.A. § 807 effective as of January 27, 1970 (P.L.1970 c. 541).

That the Legislature chose to select a narrowly confined complex of circumstances, (traditionally recognized, independently, as a criminal assault and battery) to which to assign *other* special legal consequences is, *by itself,* inconclusive as to whether the Legislature intended such other legal consequences to be additional, alternative or optional, rather than mandatorily exclusive.

Indeed, careful evaluation of the totality of the legal considerations and consequences adduced in 34 M.R.S.A. § 807 strongly suggests a conclusion which denies a pro tanto repeal by implication of 17 M.R.S.A. § 201 by 34 M.R.S.A. § 807.

Assault by inmates of the Men's Correctional Center upon an "officer or other person in the government thereof" is only a partial and alternative aspect, rather than the primary or exclusive substance, of the subject-matter covered by 34 M.R.S.A. § 807. Significant, perhaps primary, is the Legislature's additional concern to deal with escapes, or forcible attempts at escape, from the Men's Correctional Center. Likewise of importance is the careful attention directed by the Legislature (1) to establish a mechanism by which the inmate can be made to serve the remainder of the term to which he had been originally sentenced at the State Prison rather than at the Men's Correctional Center, and (2) to provide such procedure as an *alternative* to a criminal prosecution for the newly committed offense, whether it be escape, or forcibly attempted escape or assault upon any officer, or other persons, in the government of the Men's Correctional Center.[4]

Under these circumstances it would be unreasonable to conclude that the Legislature intended that coverage by 34 M.R.S.A. § 807 excludes, *as an additional and continuing viable alternative,* criminal prosecution and punishment under the general assault and assault and battery statute—17 M.R.S.A. § 201.

We are unable to apprehend any repugnancy between the two statutes, if there be repugnancy at all, which is so gross, direct and positive that to attribute to the Legislature an intention that both statutes be legally co-operative and co-effective would be to render the Legislature manifestly unreasonable. Rather, it would appear that the greater unreasonableness inheres in the position (which flows logically from the argument of petitioner) that an assault and battery, the nature of which would otherwise be minor or trivial except for the special circumstances that it had been perpetrated by an inmate of the Men's Correctional Center upon a guard at that institution, *must* be prosecuted, if it is to be prosecuted at all, only under 34 M.R.S.A. § 807—thereby to expose the offender to potential punishment by imprisonment in the State Prison for any term of years and to deprive him of the statutory limitation of punishment contained under 17 M.R.S.A. § 201 for an assault and battery which "is not of a high and aggravated nature."[5]

The information could validly charge an offense under 17 M.R.S.A. § 201. Even though the underlying incident involved an assault and battery committed by an inmate of the Men's Correctional Center upon a guard at that institution, 17 M.R.S.A. § 201

4. That the transfer alternative might have been unavailable in the specific situation here involved, because petitioner had been committed to the Center for an offense other than a felony, is immaterial to the interpretation of the general meaning and application of 34 M.R.S.A. § 807.

5. We find nothing in the statutory history of 34 M.R.S.A. § 807, as it read at all times relevant in the present case and prior to the Legislative changes in 1969 and 1970, which has any reasonable tendency to suggest that the type of assault covered by the statute, *because of the fact alone that it is perpetrated upon a guard at the Men's Correctional Center by an inmate and regardless of the other circumstances as to the nature of the assault,* is *necessarily required* by the Legislature to be treated as sufficiently severe to warrant punishment in excess of the maximum legislatively prescribed by 17 M.R.S.A. § 201 for an assault and battery which is "not of a high and aggravated nature."

could be legally operative regardless that 34 M.R.S.A. § 807 purported to deal specifically, inter alia, with such circumstances.

The last contention of petitioner is that his confinement in the State Prison is unlawful because the "Judgment and Commitment" fails to state that the Court had made a finding that the "grade", or "degree", of the assault and battery was "high and aggravated." Petitioner asserts that this deficiency invalidates an imprisonment in excess of six months—the statutorily prescribed maximum, under 17 M.R.S.A. § 201, when assault and battery is other than "high and aggravated in nature."

It is to be stressed that petitioner relies solely upon an alleged deficiency in the *recitals* of the "Judgment of Conviction." He makes no claim that the Court had *in fact* failed to make the finding of "aggravation" during the actual course of the proceedings.

The precise issue for decision, therefore, is whether, without proof of what had in fact been found or omitted to be found by the Court in the proceedings, petitioner establishes illegality of his imprisonment by showing *only* that there is an absence of a *recital* that a finding of aggravation had in fact been made by the Court.

Under the practice prior to the adoption of our new Rules of Criminal Procedure (effective December 1, 1965) it had been clearly established that even if the sentence (which then operated as the judgment) had omitted to contain an identification of the offense of which defendant had been convicted and for which punishment was being imposed, the lawfulness of the imprisonment was unaffected. The legality of the confinement was determined by the entire record of the case, as it revealed the underlying procedures of the Court, rather than solely by the contents of the judgment; and any omission in the judgment "is supplied by reference to the rest of the record in the case." Austin v. State of Maine, 158 Me. 292, 296, 183 A.2d 515, 517 (1962).

Likewise, deficiencies or irregularities in the "mittimus" (the authorization to the warden to hold the defendant pursuant to the penalty imposed), as well as the lack of a "mittimus", were without effect to impair the legality of the imprisonment. The "mittimus" was regarded as purely ministerial in nature—to be corrected, or supplied, as shown by the entire record of the case. Duncan, Petr. v. State of Maine, 158 Me. 265, 183 A.2d 209 (1962) and *Austin, supra.*

Measured by these principles of law formulated prior to the adoption of our new Rules of Criminal Procedure, the claim of petitioner would obviously fail. If the imprisonment remains lawful regardless of the omission of the "judgment" (sentence) and the "commitment authorization" ("mittimus") to identify the offense for which penalty had been imposed—(thereby to permit assessment, from the "judgment" and the "commitment authorization", of the lawfulness of the penalty in relation to the particular offense of which guilt had been established)—a fortiori the legality of the imprisonment is unimpaired by the omission of the "judgment" or "commitment" to identify a grade, or degree, of the offense as having been found by the Court. If the rest of the record as to the underlying procedures actually followed in. the case will supply deficiencies in the judgment's identification of the offense itself, the total record will likewise operate to plug any gaps relating to the identification of the grade, or degree, of the offense as found by the Court.

In short, as the law had been established prior to our new rules, it is the entirety of the record, rather than the recitals of the judgment, which finally determines the lawfulness of the imprisonment.

We perceive nothing in the new Rules of Criminal Procedure, as controlling of the situation here involved, which abrogates, or modifies, these principles of law as previously developed. Rule 32(b) provides that there shall be a "judgment of convic-

tion" which is to be "signed by the judge and entered by the clerk" (and the practice is indicated, and has been in fact followed, that a certified copy of the "judgment of conviction" functions as the "commitment" authorization—the former separate "mitti-mus"). Rule 32(b) says that the "judgment of conviction"

"shall set forth the plea, the verdict or findings, and the adjudication and sentence * * *."

It is reasonable to conclude that the reference to "findings" and "adjudication" indicates that Rule 32(b) intends as the correct procedure that the judgment of conviction "shall set forth" findings which have been made by the Court relating not only to guilt of the offense, as such, but also of the grade, or degree, of the offense, when such there is. By such practice a comparison of the face of the judgment of conviction with the applicable statute can immediately disclose the legality of the penalty imposed regarding not only the offense itself but also any statutory limitation of maximum penalty when the statute subdivides the offense into degrees or grades.

It is clear, however, that the purpose of the word, "shall", as utilized in Rule 32(b) to designate the contents of the judgment of conviction, is to direct rather than to prescribe mandatorily (such that omission nullifies) regarding the recitals of the judgment of conviction. This principle had been definitively established in the federal practice under its Rule 32(b) which is identical in wording with our Rule 32(b). As was said in Sanders v. Johnston, 165 F.2d 736 (9th Cir. 1948):

"Rule 32(b) prescribes a recital in the judgment of the several steps taken by the court during the progress of a case from the entry of a plea to the pronouncement of sentence. Such a recital in the judgment would be prima facie evidence that the steps set forth therein actually took place, but it does not follow that a failure to make such a recital in the written judgment nullifies steps which did in fact occur.

"The enactment of Rule 32(b) had for its purpose the prescribing of a uniform practice for the guidance of trial courts in pronouncing judgment, so that by following its provisions confusion, such as exists in this case, would not result. However, it is the process actually employed which determines the legality of a conviction and not a failure to make written evidence of it in the judgment. In the event of failure to make such written evidence recourse to all the records of the court may be had * * *." (p. 737) (footnotes omitted) Also: Ogden v. United States, 323 F.2d 818 (9th Cir. 1963).

This interpretation of Federal Rule 32(b), formulated prior to our adoption of an identically worded Rule 32(b), and nothing to the contrary appearing, is cogent indication of the meaning and function of our own Rule 32(b). The conclusion is the stronger because the federal interpretation comports with the spirit of the basic law of Maine as it had been developed previously, in *Duncan*, supra, and *Austin*, supra.

We decide, therefore, that any failure (if failure there be) of the "judgment of conviction" now under consideration to *recite* that there had in fact been a finding by the sentencing Court of the grade, or degree, of the offense of assault and battery as "high and aggravated" is insufficient, *ipso facto*, to render petitioner's imprisonment unlawful.

"* * * it is the process actually employed which determines the legality * * * and not a failure to make writ-

ten evidence of it in the judgment." Sanders v. Johnston, supra, 165 F.2d p. 737.

The evidence adduced in this post-conviction proceeding is silent, however, as to whether the record of the original proceedings would reveal an actual finding by the Court as to "aggravation." A problem arises, therefore, as to the legal effect of a showing by petitioner that the judgment of conviction had omitted (and this omission may be assumed for the purpose of the present argument) to recite that such determination had in fact been made. The question is whether the failure of the judgment to state that a finding of "aggravation" had in fact been made by the Court is sufficient to establish that petitioner, upon whom the ultimate burden of proof reposes, Bennett v. State, 161 Me. 489, 214 A.2d 667 (1965); Raymond v. State, Me., 251 A.2d 509 (1969), has made a prima facie case that such finding was *in fact omitted* and that, therefore, his imprisonment for a period in excess of six months is illegal.

■ We conclude that proof that the "judgment of conviction" *fails to recite* that a finding of aggravation had in fact been made—(thereby to establish the grade, or degree, of the offense of assault and battery as warranting punishment by imprisonment in excess of six months)—is inadequate to meet the petitioner's responsibility of making a prima facie case that the Court had *in fact failed* to make the finding. The burden was upon the petitioner, if he wished to prove the unlawfulness of his confinement, to go beyond the lack of recitals of the judgment and by reference to record of the underlying proceedings to establish, if such he could, that the Court had in fact failed to make a finding that the assault and battery was high and aggravated in nature.

In reaching this conclusion we advert to the concept delineated in Sanders v. Johnston:

"The enactment of Rule 32(b) had for its purpose the prescribing of a uniform practice for the guidance of trial courts in pronouncing judgment, so that by following its provisions confusion, * * * would not result. However, it is the process actually employed which determines the legality of a conviction and not a failure to make written evidence of it in the judgment." (165 F.2d p. 737)

Rule 32(b) is thus seen to create the "judgment of conviction" to function, essentially, as a useful procedural tool. It is useful to avoid confusion and to furnish a definitive time which initiates the running of the period within which an appeal of the case shall be taken, thereby to assist in the development of a single *form* of appellate review for all cases.

See: Glassman, Maine Practice, Rules of Criminal Procedure Rule 32, § 32.8, Commentary (p. 256).

Also: Rule 37(c) M.R.Crim.P. and Reporter's Notes thereon as set forth at p. 309 in Glassman, Maine Practice, Rules of Criminal Procedure.

The "judgment of conviction" can be additionally of benefit in that a recital in the judgment of conviction that a particular finding had been made by the Court can constitute prima facie evidence of the fact that the determination had been made. Proof, however, of the judgment's inadequacy to provide such prima facie evidence that a finding of aggravation *had* been made by the Court is far from the equivalent of a prima facie showing that such finding *had not* been made.

Illegality of petitioner's imprisonment might result when the Court *in fact* omits to make a finding of "aggravation" (and on this point we here intimate no opinion).

It clearly does not result, however, merely because the judgment of conviction might omit to *recite* the fact of such finding. Failure of the judgment to *say* that a determination of "aggravation" had in fact been made neither nullifies such determination if it had in fact been made nor serves as proof, sufficient to make a prima facie case, that the finding had in fact been omitted.[6]

Under all the circumstances of this case it was proper for the single Justice to deny the petition for habeas corpus seeking post-conviction relief.

The entry is

Appeal denied.

WEBBER, J., did not sit.

6. This conclusion makes unnecessary decision of the correctness of one position taken by the single Justice which has been sharply disputed by petitioner.

The single Justice had concluded that the statement in the judgment of conviction that petitioner had pleaded guilty "as charged" by information and was, therefore, convicted "as charged" by information had incorporated by reference into the judgment the allegation contained in the information that the assault and battery was "of a high and aggravated nature." On this basis the single Justice found that the judgment did in fact recite that there had been an adjudication by the Court of "aggravation."

Petitioner maintains that this holding is erroneous because it overlooks the point that the allegation of "aggravation" in the information relates to a matter which is *not* an *essential element* of the crime of assault and battery but concerns only its grade, or degree, for purposes of the imposition of penalty. Petitioner argues, accordingly, that the "aggravation" factor cannot be the proper subject of a plea of guilty. The plea of guilty, petitioner maintains, admits, and waives hearing and findings of, only those "charges" in the information which deal with the essential elements of the crime. Hence, petitioner says an adjudication of "conviction" of the offense of assault and battery "as charged by information", and constituted by a plea of guilty to the "charges" of the information, is, at best, only an adjudication of the existence of the *essential elements* of the crime; it fails to convey that there has been a finding of circumstances which are unrelated to the essential elements and which are relevant only for purposes of the imposition of punishment.

As we have stated, our decision suggests no opinion on this aspect of the issue.

There are considerations, however, which we think it appropriate to mention, especially insofar as this issue might be involved in cases which arise subsequent to May 20, 1968, the date of the decision of the Supreme Court of the United States in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) and which—under our decisions in State of Maine v. Ferris, Me., 249 A.2d 523 (1969) as modified by State v. Wheeler, Me., 252 A.2d 455 (1969) in turn relying upon the decision of the Supreme Court of the United States in DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed. 2d 1308 (1968)—has become the critical date for the effectiveness of important changes regarding the pleading and determination of the grade, or degree, of an assault and battery as being high and aggravated. These changes require (1) allegations in the accusatory pleading legally adequate to disclose the high and aggravated degree, or grade (2) right of the defendant to have "aggravation" found by a jury and (3) as stated in *Ferris,* supra, proof by the State of "aggravation" beyond a reasonable doubt.

An interesting question is precipitated whether these changes have developed legal consequences sufficiently significant in scope to require that "aggravation"— even if conceptually recognized as being other than an essential element of the crime of assault and battery—must nevertheless now be treated, for all practical purposes, as if it were an essential element of the crime. If so, this could mean that a plea of guilty should now be afforded the same practical effect in relation to "aggravation" as applies to essential elements of a crime—i. e. that the plea of guilty admits "aggravation" as alleged by the accusatory pleading, constitutes a waiver of hearing and finding thereon, and is subject to Rule 11 procedures concerning judicial inquiry as to the existence of "aggravation."

By our mention of this question, and the indication of its compass, we intimate no opinion as to an answer.