**STATE of Maine**

v.

**Stanley TOWERS.**

Supreme Judicial Court of Maine.

May 2, 1973.

David M. Cox, County Atty., George Z. Singal, Asst. County Atty., Bangor, for plaintiff.

Albert H. Winchell, Jr., Bangor, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Defendant has appealed from a judgment of the Superior Court (Penobscot County) embodying his conviction, on October 15, 1971, of the offense of assault and battery, high and aggravated in degree (17 M.R.S.A. § 201).

Evidence produced at the trial, jury-waived, warranted the following factual conclusions.

Defendant had visited a friend's house to return a car bed. The complaining witness, a thirteen year old girl, was in the house "babysitting" for a child two years of age and an infant of six months. She had known defendant as a neighbor for approximately half a year, and in all of her prior contacts with him he had always acted toward her as a gentleman.[1] Defendant and the complaining witness engaged in conversation for about fifteen minutes. Then, while complainant was holding the six months old infant, who was crying, under her right arm, defendant took hold of her and kissed her on the cheek and lips. She immediately asked him "to leave

---

1. When defendant requested to waive jury trial, the presiding Justice, as part of his inquiry into the voluntariness of the waiver, asked defendant his age and defendant replied: "44." During the trial on the merits, jury-waived, the presiding Justice could continuingly observe for himself the substantial age disparity between the complaining witness and defendant.

me alone", but defendant continued to hold her and proceeded to touch her breasts and place one of his hands between her legs in contact with her "private part" from outside her clothing. The complainant told defendant to "stop", whereupon defendant did stop and with the remark to complainant: "Don't tell anybody", he left the house. The complainant did not mention the incident until the following morning, almost twenty-four hours later, when she told her mother. The complainant waited because when she had returned home, she found that "everybody was around."

Defendant's single contention on appeal is that, within the legal meaning of "high and aggravated", the finding of an aggravated degree of assault and battery may not here stand as a matter of law. Defendant points to the fleeting nature of the incident insofar as he ceased his actions upon the second request by complainant. He further mentions that there were no physical injuries inflicted and maintains that the psychological impact upon the girl must have been minimal since she waited almost twenty-four hours before she reported what had transpired.

In State v. Bey, 161 Me. 23, 206 A.2d 413 (1965) this Court observed that assault and battery may become "high and aggravated in nature" by the presence of

"circumstances of aggravation, such as . . . great disparity between the ages and physical conditions of the parties, a difference in the sexes, indecent liberties or familiarities with a female, the purposeful infliction of shame and disgrace, . . . ." (p. 27, 206 A.2d p. 416)

State v. Rand, 156 Me. 81, 161 A.2d 852 (1960) involved a factual situation so remarkably similar to the instant case that, for purposes of the appropriate application of controlling legal principles, the cases must be held indistinguishable. Sustaining a conviction of assault and battery, high and aggravated in nature, we said in *Rand*:

"What intention could the respondent have had other than an evil intention to indulge his own lustful desires? By his indecent acts he violated the person and dignity of the child in a manner abhorrent to society." (p. 84, 161 A.2d p. 854)

Under the combined import of State v. Bey and State v. Rand the present adjudication that defendant had committed an assault and battery, high and aggravated in degree, was legally warranted.

The entry is:

Appeal denied.