**STATE of Maine**

v.

**Wayne Allen DAVENPORT.**

Supreme Judicial Court of Maine.

Oct. 4, 1974.

David M. Cox, County Atty., Bangor, for plaintiff.

Gross, Minsky, Mogul & Singal, P. A. by Norman Minsky, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Chief Justice.

Wayne Allen Davenport was convicted of committing an assault and battery of a high and aggravated nature upon the person of one Desmond Braley in violation of 17 M.R.S.A., § 201, for which offense he was sentenced to a term in Maine State Prison of not less than one and one half (1½) years and not more than five (5) years. Davenport appealed to this Court. We deny the appeal.

Represented by attorney appointed by the Court on account of his indigency, the defendant has designated some eight points of error on appeal, many of which charged court-appointed trial counsel with incompetency. Present counsel, who is not the original court-appointed counsel on appeal, has argued only three issues, undoubtedly recognizing that the previously stated claims of error were not proper subject matter of review on direct appeal.

The three issues raised are: 1) the statute, 17 M.R.S.A., § 201, is violative of Article I, Sections 6 and 6–A of the Constitution of Maine and of the Fifth and Sixth Amendments to the Constitution of the United States made applicable to the States by reason of the Fourteenth Amendment, because, in providing for the increased punishment in a felony conviction when the offense is of a high and aggravated nature, the statutory concept—"high and aggravated nature"—is so vague and uncertain as to deprive an accused of due process of law; 2) the indictment, in couching the accusation merely in the very terms of the statute without specifying the particulars of the defendant's conduct upon which the State relies to prove that the assault and battery was of a high and aggravated nature, in practical effect failed to inform the defendant of the nature and cause of the accusation and deprived him of his liberty without due process of law, all contrary to the dictates of the reference constitutional provisions, and divested the trial Court of subject-matter jurisdiction; 3) the Justice below committed obvious error affecting the substantial rights of the defendant, when, in instructing the jury respecting the test to apply in determining whether the assault and battery was of a high and aggravated nature, he advised they could consider, as one of the factors, "to what extent, really, are you, the jury, outraged by what has occurred," thus leaving, it is claimed, the resolution of the more serious aspect of the offense to the individual subjective sensitivities of the individual jurors, instead of providing them with a specific objective standard of conduct.

The evidence upon which the jury convicted the defendant of assault and battery of a high and aggravated nature may be summarized as follows:

On June 5, 1970 the defendant had been drinking heavily and in the evening he and his wife were going through a heated argument which she sought to abate by putting a call to the police. In order to do so, she ran downstairs to the Spellman apartment, where Mr. Braley was babysitting his daughter's two boys, and asked to use the telephone. Braley granted her request and she was in the process of making the call, when the defendant rushed in, grabbed the receiver out of his wife's hand and proceeded to choke her. In an attempt to free Mrs. Davenport from the defendant's grip, Braley swung him around, but, in the scuffle, absorbed the thrust of the defendant's fists aimed at his face and chest. Braley's glasses were broken and he suffered some fractured ribs.

I

CONSTITUTIONALITY OF 17
M.R.S.A., § 201

Davenport contends that our assault and battery statute [1] is unconstitutionally vague, not for failing to provide potential defendants adequate notice of the general type of conduct which is or is not criminal, but rather, for lack of a specific standard whereby aggravation can be ascertained with some degree of certainty. He takes comfort in State v. Ferris, 1969, Me., 249 A.2d 523, wherein this Court held that a defendant prosecuted for the crime of felonious assault and battery must be given the opportunity to have a jury determination of the matter of aggravation, concluding from our holding in *Ferris* that the statute

---

1. 17 M.R.S.A., § 201: "Whoever unlawfully attempts to strike, hit, touch or do any violence to another however small, in a wanton, wilful, angry or insulting manner, having an intention and existing ability to do some violence to such person, is guilty of an assault. If such attempt is carried into effect, he is guilty of an assault and battery. Any person convicted of either offense, when it is not of a high and aggravated nature, shall be punished by a fine of not more than $100 or by imprisonment for not more than 6 months, or by both. When the offense is of a high and aggravated nature, the person convicted of either offense shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 5 years, when no other punishment is prescribed."

itself is unconstitutionally vague because of its failure to set out specifically what circumstances would constitute aggravation within the meaning of the law. We reject the appellant's contention.

■ Although, in *Ferris,* the same attack was made against the statute as is here advanced to the effect that 17 M.R.S.A., § 201 was too vague, too indefinite and contained no standards for determining assaults of a high and aggravated nature to meet due process requirements, the Court did not address itself to the specific point. *Ferris,* however, recognized that "by the case law of this State and also by statute . . . a high and aggravated nature of an assault is not an element of the crime but goes only to the severity of punishment," and, by way of dictum, added:

"However, when a defendant is originally charged with assault and battery under Sec. 201 and the State decides the alleged assault and battery is one in which the circumstances indicate it was high and aggravated in its nature, then the defendant is entitled to an allegation to this effect in order that he be informed of what he has to meet in the trial of the case."

Thus, in *Ferris,* the Court implicitly indicated that the concept of aggravation had acquired such a well delineated meaning by judicial enumeration that a general allegation of aggravation would satisfy the constitutional mandate of Article I, Section 6, of the Constitution of Maine that in all criminal prosecutions the defendant has the constitutional right to know the nature and cause of the accusation. No greater requirement would be constitutionally demanded of the statute concerning the nature of the offense, in its simple or aggravated aspect. Over the years our Court, by the process of inclusion and exclusion, on a case by case basis, has fleshed out the statutory concept of aggravation to such an extent that the circumstances characterizing an assault and battery to be of a high and aggravated nature as distinguished

from a simple assault and battery misdemeanor are now clearly delineated. Judicial construction of a statute can implement a statutory concept as fully as an express legislative definition can.

■ While the basic conduct constituting the crime of assault and battery in its simple aspect punishable as a misdemeanor is specifically enumerated in the statute and raises no constitutional vagueness problem, the statutory provision elevating the crime of assault and battery to the level of a felony when it is of a high and aggravated nature and prescribing increased punishment for the same introduces a concept of conduct in more general and flexible terms. Due process requirements demand that the same rule of reasonable definiteness should apply to such penal statutes enhancing punishment as is mandated for all penal enactments. The statutory language should adequately present sufficiently distinct boundaries between the offense in its simple aspect and the offense at the felonious level so that judges and juries may fairly administer the law in accordance with the will of the Legislature. We realize, however, that in certain kinds of regulated conduct the use of general and flexible terms in fixing the standard for enhancement of penalty is inescapable. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to foster a fair and proper administration of the law.

In State v. Northwest Poultry & Egg Co., 1938, 203 Minn. 438, 281 N.W. 753, the Court said:

"[I]f the statute is no more uncertain of meaning or difficult of application to necessarily varying facts than has been repeatedly sanctioned by the courts it must be given effect."

■ Courts must construe legislative enactments so as to avoid a danger of un-

constitutionality, and if the general class of offenses to which the statute is directed is plainly within its terms and can be made constitutionally definite by a reasonable construction of the statute, it is the duty of the courts to construe the statute. United States v. Harriss, 1954, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989. See, Swed v. Bar Harbor, 1962, 158 Me. 220, 182 A.2d 664; State v. Fantastic Fair & Karmil, 1961, 158 Me. 450, 186 A.2d 352. The cardinal principle of statutory construction is to save, not to destroy. National Labor Relations Board v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893, 907, 108 A.L.R. 1352.

■ When a statute on its face is flexible and broad in its terminology such as our assault and battery statute concerning the felonious aspect thereof, it gives a potential defendant notice, by virtue of this very characteristic, that a question may arise as to its coverage, and that it may be held to cover his contemplated conduct. Bouie v. City of Columbia, 1964, 378 U.S. 347, 84 S.Ct. 1697, at 1702, 12 L.Ed.2d 894.

■ Past interpretations of our assault and battery statute by this Court have become a part of the statute as definitely as if the Legislature itself had amended the statute to reflect· expressly the judicial construction. See, Winters v. People of State of New York, 1948, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840; Hebert v. State of Louisiana, 1926, 272 U.S. 312, 317, 47 S.Ct. 103, 104, 71 L.Ed. 270, 48 A.L.R. 1102.

■■ Legislation should not be held invalid on the ground of uncertainty, if susceptible of any reasonable construction that will support it. When the language of an act appears on its face to have a generalized meaning, and from the nature of the subject matter lends itself to precise or intelligible application in the circumstances under which the Legislature intended it to operate, the courts are obliged to sustain the same as constitutionally valid by giving · it that reasonable construction which men of common intelligence would readily ascribe to the legislation.

The Legislature foresaw that a great variety of circumstances surrounding the offense could raise the simple assault and battery to one of grave and serious effect upon the victim as well as have a major impact upon the peace, health, safety, good morals and general welfare of the public. The Legislature could not be reasonably expected to isolate and specify in precise detail the particular types of assaults which it wished to proscribe under penalty of the greater punishment reserved to felonies.

In Sunset Amusement Co. v. Board of Police Commissioners of the City of Los Angeles, 1972, 7 Cal.3d 64, 101 Cal.Rptr. 768, at 773, 496 P.2d 840, at 845 it was stated:

"To make a statute sufficiently certain to comply with constitutional requirements [of due process of·law] it is not necessary that it furnishes detailed plans and specifications of the acts or conduct prohibited."

See also, Smith v. State, 1970, Fla., 237 So.2d 139.

■ A statute is not unconstitutional and void for vagueness where the meaning of the words used can be fairly ascertained by reference to the common law and to the judicial determinations in respect thereto. See, State v. Williams, 1969, Iowa, 171 N.W.2d 521, cert. den., 398 U.S. 937, 90 S.Ct. 1837, 26 L.Ed.2d 268.

A number of decisions of this Court at the time of the instant indictment clearly indicated the type of circumstances which would be within the reasonable intendment of the legislative terminology—"when the offense [assault or assault and battery] is of a high and aggravated nature."—

In State v. Bey, 1965, 161 Me. 23, 206 A.2d 413, we set out a number of factual situations which would characterize an assault and battery as one of a high and ag-

gravated nature by referring with approval to its common law definition

"as an unlawful act of violent injury to the person of another, accompanied by circumstances of aggravation, such as the use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony, great disparity between the ages and physical conditions of the parties, a difference in the sexes, indecent liberties or familiarities with a female, the purposeful infliction of shame and disgrace, resistence of lawful authority, or other aggravating circumstances."

For other cases in which convictions for assaults of a high and aggravated nature were sustained, see State v. Weeks, 1970, Me., 270 A.2d 366 (use of a dangerous weapon); State v. Thayer, 1971, Me., 281 A.2d 315 (purpose of the assault being an intention to commit another felony); State v. Devoe, 1973, Me., 301 A.2d 541 (infliction of serious injuries); State v. McKrackern, 1945, 141 Me. 194, 41 A.2d 817; State v. Rand, 1960, 156 Me. 81, 161 A.2d 852 and State v. Towers, 1973, Me., 304 A.2d 75 (indecent sexual acts upon the person of a female child or adult).

In State v. Smith, 1973, Me., 306 A.2d 5, we stated that the assault and battery statute, in the application of the "high and aggravated nature" concept, called for the consideration of the totality of the circumstances surrounding the conduct and that "the determination of the severity [misdemeanor or felony] of an assault and battery must of necessity be decided on a case by case basis." The circumstances which in that case in combination warranted a jury finding of aggravation were: "the planning of the assault, the cutting of telephone wires to prevent notification to the police, the forcible breaking through a window into the dwelling house where defendant's wife and children were temporarily residing, his use of his baby as a hostage to enforce his will upon his wife and other occupants of the home, his threats to

use the knife in his hand to kill his child if his commands were not obeyed, and the subsequent abandonment of the baby, aged two and a half months, at a place where it could readily have drowned or suffocated in mud and water."

Under the existing judicial construction of the statute as it has been implemented by this Court and its connotation at common law, we hold that the statutory terms "when the offense is of a high and aggravated nature" are fully descriptive of a sufficiently ascertainable core of basic types of factual patterns ordinarily constituting aggravation as to guide juries and courts in a fair application of the statute and meet the test of constitutional definiteness by fairly informing the ordinary person of common intelligence what conduct will render him liable to the more severe penalties.

II

SUFFICIENCY OF THE INDICTMENT

The defendant further contends that the indictment charging him with the offense of assault and battery of a high and aggravated nature was fatally defective for using conclusory language as to aggravation without specifying the manner in which the offense was committed showing the intensity thereof. The indictment reads as follows:

"The Grand Jury Charges:

That on or about the 5th day of June, 1970, in the County of Penobscot, and State of Maine, Allen Wayne Davenport, on one Desmond Braley, feloniously did make an assault of a high and aggravated nature, and him the said Desmond Braley, did then and there strike, beat, bruise, wound and ill treat, in a high and aggravated manner . . . ."

Davenport relies for support of his contention upon the constitutional require-

ments that in all criminal prosecutions the accused shall have a right to demand the nature and cause of the accusation. Constitution of Maine, Article I, § 6; Amendments VI and XIV to the Constitution of the United States.

■ A person accused of crime has a constitutional right to know from the face of the criminal pleading the exact offense charged against him. State v. Smith, 1971, Me., 277 A.2d 481.

We have said that constitutional requirements are satisfied when the indictment contains such plain, concise and definite allegations of the essential facts constituting the intended offense as shall adequately apprise an accused of reasonable and normal intelligence of the criminal act charged and the nature thereof, sufficiently enabling him to defend and, upon conviction or acquittal, to make use of the judgment as a basis of a plea of former jeopardy, should the occasion arise. State v. O'Clair, 1972, Me., 292 A.2d 186.

In State v. Charette, 1963, 159 Me. 124, 188 A.2d 898, we recognized that, if a criminal statute was too vague and indefinite in language in itself to give adequate notice to an accused of reasonable and normal intelligence of the facts constituting the charge proffered against him, the indictment must go beyond the mere words of the statute and must contain allegations specifically descriptive of the substance, nature or manner of the offense. But we added:

"The prosecutor, however, is not required, by the accepted rules of criminal pleading, to make averments in indictments or complaints to the degree they become a recital of evidence."

We did indicate in State v. Ferris, supra, as previously mentioned, that, because an accused in a criminal prosecution has the constitutional right to know the nature and cause of the accusation,

—"when a defendant is originally charged with assault and battery under Sec. 201 and the State decides the alleged assault and battery is one in which the circumstances indicate it was high and aggravated in its nature, then the defendant is entitled to *an allegation to this effect* in order that he be informed of what he has to meet in the trial of the case.

\* \* \* \* \* \*

"[*A*]*ggravation* should be pleaded if the alleged facts so warrant." (Emphasis supplied)—

■ But the offense of assault and battery under 17 M.R.S.A., § 201, whether considered in its simple aspect or in its more serious concept of high and aggravated in nature, is a single crime. This Court so construed the statute following its amendment in 1933.[2] We said in Rell v. State, 1939, 136 Me. 322, 327, 9 A.2d 129, 131:

"As we construe the new law, we are not of opinion that the Legislature intended to divide assault and battery into separate and distinct crimes. It is still assault and battery which is punishable, and facts which establish that the offense is or is not of a high and aggravated nature go only to the measure of punishment and need not be alleged. The rules laid down for charging the offense under the general statute are neither abrogated nor changed by its amendment. The authorities already cited are controlling precedents for holding that assault and battery, regardless of its enormity, may be charged in general terms without specifying the means by which it was accomplished, and appropriate punishment imposed."

The unitary concept respecting the crimes of assault and assault and battery was reasserted recently by this Court in State v. Shorey, 1973, Me., 301 A.2d 3, 5:

"[T]he offense is assault (or assault and battery) and . . . assault of a

2. P.L. c. 92, § 6.

high and aggravated nature is not a distinct and separate crime."

The reason why we said in *Ferris* that a defendant is entitled to an allegation of aggravation was not because aggravation is an element of the crimes of assault and assault and battery, but rather, to give notice to an accused that he is being charged with the more serious aspect of the crime, to wit, the felonious assault or assault and battery which carries a severe state prison sentence, and this, on the ground of "due process or governmental fair play."

The State must allege in an indictment every essential element of the crime sought to be charged; it must set out the facts which constitute the necessary ingredients of the offense. Haller v. State, 1968, Me., 241 A.2d 607; Toussaint v. State, 1970, Me., 262 A.2d 123. If an indictment is insufficient in this respect, it is void and the court lacks jurisdiction to proceed with the prosecution, arrive at a valid conviction or impose a lawful sentence thereunder. Such a jurisdictional defect may be noticed and acted upon by the court "at any time during pendency of the proceeding," even though the error was not suggested by the parties. Dow v. State, 1971, Me., 275 A.2d 815, 821; State v. Scott, 1974, Me., 317 A.2d 3. Rule 12, M.R.Crim.P.

But defenses and objections based on defects in the indictment "other than that it fails to show jurisdiction in the court or to charge an offense" may be raised only by motion before trial. Failure to present any such defense or objection before trial constitutes a waiver thereof.

Rule 12, M.R.Crim.P. Such defects normally involve insufficiently particularized allegations of facts underlying the elements of a crime rather than outright omissions of the essential elements themselves.

In the instant case, where the indictment charged the assault and battery to be of a high and aggravated nature, the constitutional requirement of "due process and governmental fair play" mandated in *Ferris* has been complied with, and, since aggravation as such is not an essential element of the crime of assault and battery, the particular evidentiary circumstances characterizing the crime to be of a high and aggravated nature need not be set out in the indictment.[3] Assault and assault and battery may be charged in general terms without specifying the means by which the crime is committed. State v. Mahoney, 1923, 122 Me. 483, 120 A. 543. Aggravation, a term well understood at common law (see, State v. Bey, supra) may similarly be charged in general terms, without setting out the specifics of the circumstances which raise the crime from the *misdemeanor* category to the felony class.[4] To the extent State v. McKrackern, 1945, 141 Me. 194, 41 A.2d 817, may hold that aggravation, even in general terms, need not be alleged in the indictment, it is overruled.

If further information is necessary to the preparation of his defense against the charges of assault and assault and battery of a high and aggravated nature and to avoid prejudicial surprise at trial, an accused, within the sound judicial discretion of the presiding justice, would

---

3. In Fuller v. State, 1971, Me., 282 A.2d 848, at footnote 6, we raised the inquiry whether "this could mean that a plea of guilty should now be afforded the same practical effect in relation to 'aggravation' as applies to essential elements of a crime—i. e. that the plea of guilty admits 'aggravation' as alleged by the accusatory pleading, constitutes a waiver of hearing and finding thereon, and is subject to Rule 11 procedures concerning judicial inquiry as to the existence of 'aggravation'."

Again, as in *Fuller*, we intimate no opinion thereon.

4. In Williams v. State, 1971, Me., 276 A.2d 601, we held that an indictment which charged the accused in the statutory terms of assault of a high and aggravated nature "clearly and sufficiently" alleged the felony crime, although the issue was not specifically treated.

be entitled to a bill of particulars respecting the conduct or circumstances constituting aggravation. The court for cause may direct the filing of a bill of particulars. Rule 7(f), M.R.Crim.P.; 3 Maine Practice, Glassman, § 7.14, p. 85. Although a bill of particulars cannot be used to cure an indictment which fails to allege the essential elements of the crime charged,[5] this device was legitimate criminal practice, prior to the adoption of our new Rules of Criminal Procedure and was used for the purpose of obtaining a further amplification of the facts underlying the crime charged. "[T]he common law has always recognized an inherent power in the courts to order a statement of particulars whereby the accused may be able *adequately* to prepare his defense, and establish a record upon which to plead prior jeopardy, if occasion demands." State v. Littlefield, 1966, Me., 219 A.2d 755 (Emphasis supplied and citations omitted). This procedure further serves to narrow for the benefit of the defendant "the latitude allowable to the prosecution in the proof which the prosecution will offer at trial." State v. Benner, 1971, Me., 284 A.2d 91, 99. See also, State v. Wedge, 1974, Me., 322 A.2d 328.

We are aware that, in Davis v. State, 1973, Me., 306 A.2d 127, we stated:

"[W]hen statutes provide for increased punishment where crimes are committed under aggravated circumstances, the particulars of aggravation [even though not elements of the crime] are so intimately connected with the 'nature' of the accusation that they must be alleged in the indictment or information and proved at trial *for the accused to be sentenced to the greater penalty.*" (Emphasis added).

This is not in conflict with our present holding. In *Davis,* we were concerned with our arson statute [6] which specifically provides for an increased penalty if the burning is committed in the nighttime.

For the same reasons of "due process and governmental fair play" which compel us to require the allegation of "high and aggravated nature" in relation to a charge of felonious assault or assault and battery, an indictment or information in the case of arson must allege that the crime was committed in the nighttime, if the prosecution intends to call for the imposition of the more severe statutory penalties. But, as stated in *Davis,* further particularity such as the precise hour of the night at which the act was done is not required for a valid indictment.

We view this case as distinguishable from State v. White, 1971, Me., 280 A.2d 810, and State v. Houde, 1955, 150 Me. 469, 114 A.2d 366, which respectively involved a complaint charging disorderly conduct and reckless driving. In each case, the crime lies not in the generic conduct itself, but in the underlying facts constituting the conduct. Many forms of conduct and language may be offensive and annoying to others, and yet could not be labeled disorderly conduct. Certain motor vehicle operations may be disapproved by many, and yet would not be deemed reckless driving. When, under a generic statutory proscription, the underlying facts must needs determine the essential elements of the crime, these necessary underlying facts must be alleged to have a valid complaint, indictment or information and must be proved to support a conviction.

### III

### INSTRUCTIONS TO THE JURY

▬ The defendant has raised for the first time at oral argument upon this appeal the trial Justice's alleged error in his instructions when, after enumerating, by way of examples, certain factors which would characterize an assault and battery of a high and aggravated nature as distinguished from a simple one, he told the jury: "In a sense, it depends upon to what

---

5. State v. Toppi, 1971, 275 A.2d 805.

6. 17 M.R.S.A., § 152.

extent you as members of this community are outraged by what has happened." We have examined this claim of error within the context of Rule 52(b), M.R.Crim.P. which provides that obvious errors affecting substantial rights may be noticed although they were not brought to the attention of the court [seasonably].

While the quoted statement, by itself, would have been improper, our evaluation of the instructions as a whole leads us to conclude that there was no error, let alone error sufficient to affect prejudicially the substantial rights of the accused under Rule 52(b). The defendant takes nothing from this belated charge of error.

The entry will be

Appeal denied.

All Justices concurring.