STATE of Maine

v.

Robert R. FERRIS.

Supreme Judicial Court of Maine.

Jan. 24, 1969.

Ronald E. Ayotte, County Atty., Alfred, for plaintiff.

Charles L. Nickerson and Basil L. Kellis, Sanford, for defendant.

Before WILLIAMSON, C. J. and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

TAPLEY, Justice.

On appeal. The appellant was indicted for the crime of manslaughter. The case was tried before a jury in the Superior Court, within and for the County of York. The jury returned a verdict of "guilty of assault." Following the rendition of the verdict the presiding Justice found, on the basis of the evidence produced at the trial, that the assault was of a high and aggravated nature. Defendant was sentenced to a term of not less than 1½ years and not more than 5 years in the State Prison. Counsel for defendant, after the State rested, made a motion for a directed judgment of acquittal, which was denied. Later, at the conclusion of defendant's case, he presented a motion for a directed judgment of acquittal. No ruling was made by the Court on this motion. The defendant seasonably, after verdict, renewed his motion for a directed judgment of acquittal. This motion was denied. Glassman, Maine Practice, Rules of Criminal Procedure, Rule 29. The appeal is from the judgment. Defendant's contentions of errors are:

1. Insufficient credible evidence presented by the State to warrant a verdict of guilty of the offense charged in the indictment, to wit, manslaughter.

2. There was insufficient evidence at completion of defendant's case to warrant conviction.

3. There was insufficient evidence presented upon which the jury was warranted in finding the defendant had committed an assault in a wanton, wilful, angry or insulting manner.

4. Title 17, M.R.S.A. Sec. 201 (assault and battery) is in violation of defendant's constitutional rights in that said section is too vague and indefinite and contains no standards of determining assault of a high and aggravated nature.

5. The finding that an assault is of a high and aggravated nature is a finding of fact and is a jury function to which the defendant is entitled according to a right guaranteed to him by the Constitution.

6. Insufficient evidence in the case to support the Justice in finding that the offense of assault and battery was of a high and aggravated nature.

7. There was error in the Court's finding that the assault was of a high and aggravated nature as by so doing such finding and the resulting sentence of 1½ years to 5 years in the State Prison, in effect, found the defendant guilty of a felony, while the jury verdict was one within the category of a misdemeanor.

The defendant, Robert A. Ferris, visited the home of John Mattress on the evening of January 7, 1967. He was accompanied by a brother-in-law. When he arrived there he found Harold E. Mattress, the decedent, a woman named Evelyn Coburn, his housekeeper, and John Mattress. Then ensued some drinking and much conversation. During the course of the evening Harold Mattress, who was visibly intoxicated, accused the defendant of sexual wrong-doings with Evelyn Coburn, whereupon a fight ensued. There is testimony that the defendant struck Mr. Mattress in the face a number of times knocking him down; that his face became swollen and blood was running from his nose. On January 18th Mr. Mattress was taken to the emergency room of the Mary Hitchcock Memorial Hospital. He was seen by Dr. Ernest Sachs, Jr., a neurosurgeon, soon after his arrival. Dr. Sachs made a neurological examination, complete with laboratory work and x-rays. He noted there were bruises with purple marks of discoloration on the right side of Mattress' face and the right side of his neck and chest. He performed the process of arteriogram to assist in making a diagnosis. Through

this process the doctor was able to view by x-ray the blood vessels of the head. Among other conditions the doctor found a hematoma, or blood clot, which was later removed by surgery. The doctor observed that the cause of death of Mr. Mattress was due to the subdural hematoma which was removed on January 18th, death occurring 5 days later. In his testimony the doctor goes to some length in explaining that blood clots may form in the head on the opposite side than that receiving a blow. In this case the blow was on the right and the blood clot on the left side. The substance of the doctor's testimony was that Mr. Mattress received a blow on the right side of the head which caused the hematoma on the left side of the brain, resulting in his death. The doctor testified, in part:

"Q. Doctor, did you say that a blow from a fist would be consistent with the type of bruises that you saw on Harold Mattress's face?

THE COURT: Blow when?

MR. FITANIDES: When you examined him.

THE COURT: No. The blow when?

Q. (By Mr. Fitanides) A blow two weeks previous to your examination?

A. Yes.

Q. Would a blow from a fist be consistent with the type of bruises you observed on Harold Mattress's face?

A. Yes, sir.

Q. And can you say with reasonable medical certainty whether or not a blow to this side of the face two weeks previously could form this blood clot that you operated on?

A. Yes.

THE COURT: You asked, can you state with reasonable medical certain-

ty? He said Yes. The next question. What do you state?

THE WITNESS: I was waiting for that.

Q. (By Mr. Fitanides) Now, can you give us your opinion as to whether or not this type of blow could cause this blood clot?

A. In my opinion, this type of blow could cause this blood clot."

Dr. Sachs' testimony as to cause of death was corroborated by the pathologist who performed the postmortem.

Defendant attempted to show that the blow on the side of the head might have been caused by falling. It is, however, obvious that the jury determined that the blow that caused the death of Mr. Mattress was delivered by the defendant and a review of the testimony in this area develops sufficient evidence upon which the jury could so find.

In murder cases the jury is given the opportunity, if the evidence warrants it, to return a verdict of manslaughter. State v. Park, 159 Me. 328, 193 A.2d 1. The same principle is applicable in manslaughter cases where the jury may return a verdict for the lesser offense of assault and battery. A person indicted for an offense may be acquitted of a part by the jury and found guilty of the residue. 15 M.R.S.A. Sec. 6. See State v. Leavitt, 87 Me. 72, 32 A. 787; Carson, Petitioner for Writ of Error, 141 Me. 132, 39 A.2d 756; Collins, Petitioner for Writ of Habeas Corpus v. Robbins, 147 Me. 163, 84 A.2d 536; and State v. Ham et al., 54 Me. 194. The defendant claimed self defense as an affirmative defense to the charge of manslaughter. The Court in his instructions to the jury stated that self defense in a criminal case is an affirmative defense where the burden of proof is on him who asserts it to prove it by a fair preponderance of evidence. This instruction, says counsel for the defendant in his brief, is erroneous. Defendant argues that the presid-

ing Justice was in error when he instructed the jury that self defense was an affirmative defense and must be proven by the defendant by a preponderance of the evidence. No such complaint of error is included in his points of appeal and, further, no objection was made to the charge in this respect.

> " * * * No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stated distinctly the matter to which he objects and the grounds of his objections. * * *." Glassman, Maine Practice, Rules of Civil Procedure, Rule 30(b).

If there was error in this area of the Judge's charge it was not of a highly prejudicial nature and calculated to result in an injustice; therefore we do not consider it. State v. Smith, 140 Me. 255, 37 A.2d 246.

■ Another contention of defendant is that there was insufficient evidence to prove that the defendant committed the assault in a wanton, wilful, angry or insulting manner. In reviewing the record we find it contains evidence of sufficient probative force to prove the necessary elements to constitute the crime of assault and battery as defined in 17 M.R.S.A. Sec. 201.

Counsel for the defendant attacks the constitutionality of 17 M.R.S.A. Sec. 201 because he says it is too vague, too indefinite and contains no standards for determining assaults of a high and aggravated nature. He further says that the Court erred in finding that the assault was of a high and aggravated nature and, by so doing, deprived the defendant of having the constitutional right of determination of this factual question by the jury. The case law of Maine has been well established over the years that the element of aggravation is no part of the crime of assault and battery but goes only to the severity of the punishment. This fact is also estab-

lished by the clear and understandable language of the statute. The presiding Justice in determining that the assault was of a high and aggravated nature was not only justified in doing so by the evidence which he heard in the trial of the cause but also he was supported by the well established procedures as supported by the case law of the State. However, we feel the time has come when this Court should take a long, hard look and review the established procedures in this area in light of the emphasis placed upon the constitutional rights of individuals charged with crime by judicial decisions of recent years.

It is an incongruous situation when a person is found guilty of a misdemeanor (assault) by a jury and the trial judge finds the assault to be of an aggravated nature and sentences the person to State Prison as though he had been found guilty of a felony.

> "It has been held that in enacting a statute defining 'assault' and 'assault and battery' and providing punishment for those offenses, depending on whether the offense charged is, or is not, of a 'high and aggravated nature,' the legislature did not intend to divide assault and battery into separate and distinct crimes, the question whether the offense is, or is not, high and aggravated going merely to the measure of punishment." 6 Am. Jur.2d, Assault and Battery, Sec. 50.

Maine appears to be the only jurisdiction cited to support the statement that aggravation is not an element of the crime but goes only to the measurement of punishment.

This Court over the years has approved the procedure taken in this case where the trial judge determines the factual question of whether the assault is of a high and aggravated nature. Rell v. State, 136 Me. 322, 9 A.2d 129, 125 A.L.R. 602; State v. McKrackern, 141 Me. 194, 41 A.2d 817; State v. Bey, 161 Me. 23, 206 A.2d 413; State v. Tyler, Me., 219 A.2d 754. Reference is made to Maine Law Review, Vol.

19, No. 2, Page 372, wherein is contained a brief history of the assault statute and some analysis of Maine cases treating. of the questions of high and aggravated nature in relation to the assault statute.  .

The Constitution of Maine provides, in part:

"In all criminal prosecutions, the accused shall have a right * * *

"To have a speedy, public and impartial trial, and, except in trials by martial law or impeachment, by a jury of the vicinity." Art. I, Sec. 6, Constitution of the State of Maine.

It is true that it has been determined by the case law of this State and also by statute that a high and aggravated nature of an assault is not an element of the crime but goes only to the severity of punishment. Under these circumstances a defendant is deprived of a jury finding not as to guilt or innocence of the charged crime of assault but as to the length of the term of his imprisonment which frequently in effect gives him a record of a felon without benefit of jury determination. This type of procedure is foreign to due process or governmental fair play and certainly results in the type of injustice to be frowned upon by a good and just order of criminal jurisprudence. The assault and battery statute (17 M.R.S.A. Sec. 201) in its penalty portion provides:

"When the offense is of a high and aggravated nature, the person convicted of either offense shall be punished by a fine of not more than $1000 or by imprisonment for not more than 5 years, when no other punishment is prescribed."

Thus it is plain to be seen that a person charged with simple assault could be deprived of his liberty for a maximum of 5 years without benefit of a trial by jury on the all important issue of aggravation.

Duncan, Appellant v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) is decisive of the question. Duncan was tried on a charge of simple battery before a judge without a jury. The crime was a misdemeanor punishable by a fine of not more than $300. or imprisonment for not more than 2 years. He was convicted and sentenced to serve 60 days in the parish prison and pay a fine of $150. The point in this case is not the sentence of 60 days but the penalty which provides a maximum of 2 years.

In *Duncan*, the U. S. Supreme Court, on pages 159, 160, and 161 of 391 U.S., on pages 1452, 1453, and 1454 of 88 S.Ct., on pages 501, 502, and 503 of 20 L. Ed.2d speaks in the following language:

"Louisiana's final contention is that even if it must grant jury trials in serious criminal cases, the conviction before us is valid and constitutional because here the petitioner was tried for simple battery and was sentenced to only 60 days in the parish prison. We are not persuaded. It is doubtless true that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States. Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses. * * * *But the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment.* * * * In the case before us the Legislature of Louisiana has made simple battery a criminal offense punishable by imprisonment for two years and a fine. The question, then is whether a crime carrying such a penalty is an offense which Louisiana may insist on trying without a jury. (Emphasis supplied).

"We think not. * * *

*        *        *        *        *        *

"We need not, however, settle in this case the exact location of the line be-

tween petty offenses and serious crimes. It is sufficient for our purposes to hold that a crime punishable by two years in prison is, based on past and contemporary standards in this country, a serious crime and not a petty offense."

In applying the rationale of the decision in Duncan to the instant case it is obvious that wherein the statute *provides a penalty of not more than 5 years* for a defendant who is found to have committed an assault of a high and aggravated nature that he is entitled to have a jury determination of the question, and that a finding by a trial judge violates his constitutional right of trial by jury.

■ The burden is upon the State to prove beyond a reasonable doubt that the offense of assault and battery is of a high and aggravated nature in the instant case. In all other cases of assault where the question of aggravation arises, either by plea of guilty or by trial, the burden on the State is the same.

■ It is true that according to the language of Sec. 201, as presently written, aggravation goes only to the severity of sentence and is not to be considered as an element of the crime. According to Duncan, which we have cited and approved, the maximum sentence providing for an assault of a high and aggravated nature places the conviction and sentence in the category of a felony and not a misdemeanor. In the instant case the defendant was charged with the crime of manslaughter and the jury had a right under the law to reduce the crime to the lesser one of assault. However, when a defendant is originally charged with assault and battery under Sec. 201 and the State decides the alleged assault and battery is one in which the circumstances indicate it was high and aggravated in its nature, then the defendant is entitled to an allegation to this effect in order that he be informed of what he has to meet in the trial of the case. In all criminal prosecutions the defendant has the constitutional right to know the nature and cause of the accusation. Constitution of Maine, Art. I, Sec. 6.

Technically, under the present assault statute, there is no requirement to allege that the assault was of a high and aggravated nature but in light of our decision in this case, where the severity of sentence places a msdemeanor in the category of a felony, it logically follows that aggravation should be pleaded if the alleged facts so warrant.

We overrule that portion of those cases which heretofore have held that the trial judge may make a determination that an assault and battery was of a high and aggravated nature.

The holdings in this case are not retroactive. They do not affect those persons whose trials had commenced prior to the certification of this opinion.

Appeal sustained.