STATE of Maine

v.

Raymond C. BICKFORD.

Supreme Judicial Court of Maine.

July 31, 1973.

 

---

Donald H. Marden, Asst. County Atty., Augusta, for plaintiff.

Sanborn, Moreshead & Schade by Peter T. Dawson, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

In a trial, jury-waived, in the Superior Court (Kennebec County) defendant was found guilty of the offense (in violation of 17 M.R.S.A. § 2103) of breaking and entering a building in which valuable things were kept and committing larceny therein, the building being identified as the "Rome Elementary School, . . . property of the Town of Rome." Defendant was sentenced to imprisonment in the county jail at Augusta for eleven months, execution of all but three months of the term being suspended and defendant being placed on probation for two years. Defendant has appealed from the judgment of conviction and assigns as reversible error the denial of a motion for judgment of acquittal made at the conclusion of all of the evidence.

The indictment charged that the property stolen by the defendant from the Rome Elementary School, as an incident of the breaking and entering therein, consisted of a beige Royal 440 typewriter, 60 pounds of hamburg meat, one case of orange juice and 56 one-half pints of Hunt's Dairy milk.

All of the evidence was presented by the State through three witnesses: Richard Sampson, Principal of the Rome Elementary School, Lowell Swett, a Sergeant of the Oakland Police Department who had arrested the defendant, and Aurelle Vellieux, a Kennebec County Deputy Sheriff who investigated the alleged offense.

Mr. Sampson testified that he opened the school building on the morning of September 23, 1971 and observed that the cafeteria room was "in a general state of disorder"; papers were scattered around and the door of the freezer was open. Mr. Sampson who knew the amounts and types of food kept in the cafeteria because he was responsible, with the school cook, for the hot lunch program, ascertained that much food, recently in the freezer and a refrigerator, was missing, including hamburg meat, milk, orange juice, pork, chicken and butter. By a search of other rooms in the school, Mr. Sampson satisfied himself that a beige-colored Royal 440 typewriter, a candle-holder with the candle in it and a set of ornamental bells were also missing.

After the police had arrived, Mr. Sampson noticed that a window had been pried open—slivers of paint and wood chipped from the window sill remaining nearby—and the screen on the outside of the window had been torn.

The police took Mr. Sampson to Arbo's Garage in Waterville. There, Mr. Sampson recognized on the back seat of a green 1962 Pontiac a beige Royal 440 typewriter and hamburg meat packaged and labelled, "Donated Commodities"—the same label which had been on the hamburg meat missing from the school cafeteria's freezer. The evidence revealed that this automobile had been brought to Arbo's Garage at approximately 2:00 a. m. that morning, under the direction of Sergeant Swett who, a short time earlier, had arrested the defendant, at a place approximately seven miles from the Rome Elementary School, for operating the vehicle while under the influence of intoxicating liquor.

Sergeant Swett testified that as he was in the process of making the arrest of the defendant, he had observed on the back seat of the green Pontiac a typewriter located on top of a number of cartons of food which were "frosted." Sergeant Swett impounded the automobile and made an inventory of its contents which included a beige Royal 440 typewriter, hamburg meat, orange juice and "a set of three bells."

Deputy Sheriff Vellieux testified that he had gone to the Rome Elementary School on the morning of September 23, 1971 to conduct an investigation of a reported burglary. Upon close examination of a "jimmied" window, he observed.

> "two indentations, . . . [one] to my right, on the sash and the frame and the other on the upper part of the window sash and frame."

Deputy Vellieux also checked the green Pontiac of defendant and observed, in addition to the food items and the typwriter as described by Sergeant Swett, a screwdriver with white paint on its tip lying on the floor of the back of the automobile. Returning to the school, Deputy Vellieux tested the match between the screwdriver and the indentations on the window sash and frame and concluded that there was an exact fit. Both the typewriter and the screwdriver were admitted into evidence without objection.

Defendant argues that the evidence was legally inadequate to establish either that the Rome Elementary School building and the personalty in it were ". . . the property of the Town of Rome" or that defendant was the thief of the personal property described in the indictment as stolen. Specifically, defendant asserts that (1) portions of Mr. Sampson's testimony indicated Mr. Sampson was uncertain whether the Town of Rome had the legal title to the school building and the food in it, and (2) the description of the typewriter as a "beige Royal 440" and of the food only by generic characterizations as hamburg meat,

orange juice and milk (even though of a particular dairy) is legally insufficient to identify property as a subject of larceny.

There is no merit to these arguments.

■■ The designation in the indictment that the Rome Elementary School was ". . . the property of the Town of Rome" is an adequate pleading allegation of the identity of the building and the proprietary interest in it. State v. Small, Me., 267 A.2d 912 (1970). The testimony of Mr. Sampson was clearly adequate as proof of the allegation insofar as it showed that the Town of Rome was, as against the accused burglar, rightfully in possessory occupancy of the building. 15 M.R.S.A. § 752; State v. Small, supra. In any event, notwithstanding that Mr. Sampson at one point might have "assumed" that the Town of Rome "owned" the building, another portion of his testimony was definite on the subject, as follows:

> "Q And, what about the Town of Rome, now; do they have a school administrative district, or does the Town own that school?
>
> "A It's the Town and that is the only school . . .."

Similarly, as to the personal property alleged to be stolen, 15 M.R.S.A. § 752 provides that:

> "In an offense in any way relating to . . . personal estate it is sufficient and not a variance if it is proved at the trial that, when the offense was committed, the actual or constructive possession of . . . any part thereof was in the person or community alleged in the indictment to be the owner thereof."

Here, regardless that Mr. Sampson might have been uncertain as to the name in which the personal property was received, his testimony was clear that the Town of Rome possessed it rightfully as against the defendant charged with being the burglar and thief, to the extent that it was in a building rightfully possessed by the Town.

Mr. Sampson's testimony thus established the "property" interest of the Town of Rome in the personal property for the purposes of the larceny aspect of the offense of breaking, entering and larceny (17 M. R.S.A. § 2103). State v. Small, supra.

The ultimate inquiry, then concerns the adequacy of the evidence to prove that defendant committed larceny of the personal property alleged by the indictment to have been stolen from the Rome Elementary School.

Since the evidence was plainly sufficient to authorize a fact-finder's conclusion beyond a reasonable doubt that the property found missing by Mr. Sampson had been stolen from the school, the question becomes whether the evidence warrants a conclusion beyond a reasonable doubt that defendant was in possession of this stolen property recently after the break and entry into the school. If so, a fact-finder would be legally justified on the basis of such possession by defendant, if unexplained by the evidence, in concluding beyond a reasonable doubt that defendant had committed the break and entry into the Rome Elementary School and the larceny therein of property described in the indictment. State v. Saba, 139 Me. 153, 27 A.2d 813 (1942); State v. Gove, Me., 289 A.2d 679 (1972); Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

■ In this connection, we mention, preliminarily, that it suffices that the evidence establishes that defendant had stolen some, not necessarily all, of the property charged stolen by the indictment. Owens v. State, Ind., 266 N.E.2d 612 (1971); State v. McCulley, Mo., 327 S.W.2d 127 (1959); Tucker v. State, 100 Fla. 1440, 131 So. 327 (1930); 15 M.R.S.A. § 752.

■ As State v. Small, supra, clarifies, property comprehended within a general class of standardized consumer products may be adequately proved stolen, even though it lacks "personal marks" or other characteristics of unique differentiation, so long as the totality of the evidence, circumstantial or otherwise, yields other bases by which identification is shown beyond a reasonable doubt.

■ Here, at approximately two o'clock in the morning—a time, even if the evidence be taken most favorably to defendant, not possibly more than eleven hours after the break and entry into the school (since the evidence showed the school intact as of 3:15 p. m. of the prior afternoon) and, therefore, a time recently after such break and entry,—defendant was on a road "normally" used to go from the Rome Elementary School to the municipality of Oakland, and he was at a place not more than seven miles distant from the school. He was then and there found in possession of (1) a beige Royal 440 typewriter, (2) hamburg meat and cartons of food marked "Donated Commodities", this being the same labelling which was on the hamburg meat and cartons of food stolen from the school, (3) ornamental bells, ornamental bells being among the items stolen from the school, and (4) a screwdriver with white paint on its tip, the paint being of the same color as that of the wood surrounding a window at the school which had been "jimmied", and the screwdriver fitting an indentation in the woodwork in the immediate vicinity of the "jimmying."

These close similarities between the typewriter and other items found in the recent possession of defendant and the property stolen from the Rome Elementary School, combined with the highly unique additional factors that an item of property not commonly possessed, i. e., ornamental bells, was in the possession of defendant recently after ornamental bells had been stolen from the Rome Elementary School and, simultaneously, defendant had in his possession a screwdriver fitting indentations in a "jimmied" window of the school and containing paint of the same color as was on the school window woodwork, yield a confluence of circumstances sufficiently compelling to sustain, consistently with the

requirements of proof beyond a reasonable doubt, the fact-finder's conclusions that (1) recently after the break and entry, defendant was in possession of some of the property stolen from the Rome Elementary School and, therefore, by virtue of inferences legally warranted from such facts otherwise unexplained by the evidence, (2) defendant was the person who had broken and entered into the school and had committed the larceny therein of property identified in the indictment. State v. Saba supra, and State v. Gove, supra.

A final contention of the defendant relates to alleged inadequacy of the evidence validly to support the fact-finder's conclusion that the burglary had occurred in the "nighttime."

■ We note, initially, that 17 M.R.S.A. § 2103 defines the offense with which we are here concerned as committed when one

". . . breaks and enters any . . . building . . . in which valuable things are kept, and commits larceny therein."

"Nighttime", as distinguished from "daytime" is not an essential element of the offense as thus defined. The "nighttime"-"daytime" differentiation bears only upon the severity of penalty—the allowable punishment being reduced from a maximum of fifteen years imprisonment (without any fine authorized) (nighttime) to the alternatives of a maximum period of confinement of six years or a maximum fine of $1,000, (daytime).

It is as to the adequacy of the evidence relative to "nighttime" as a factor producing enhanced penalty consequences that defendant purports to claim error cognizable on appeal in the denial of a motion for judgment of acquittal.

■ As shown by Rule 29 M.R.Crim.P., however, a motion for judgment of acquittal raises only the question of defendant's right to be acquitted of the offense charged because the evidence is insufficient to prove the offense in terms of its essential elements. The motion for judgment of acquittal does not, therefore, reach issues concerned with proof of the legislative criteria, assigned in advance, to delineate ranges of greater or lesser punishment.

Hence, defendant cannot properly rely on the denial of a motion for judgment of acquittal as a preservation for appellate review, of the issue of the sufficiency of the evidence to establish "nighttime" as the time of the offense here charged.

■ Moreover, throughout his argument to the presiding Justice in support of the motion for judgment of acquittal, counsel for the defendant in no respect suggested that he was directing attention to the deficiency of the evidence relative to the "nighttime" aspect of the occurrence of the offense. This point is advanced for the first time in the argument on appeal. Counsel for the defendant has thus afforded us no basis upon which we might, with reason, interpret his fundamental position during the trial proceedings to have been, in substance, a two-pronged approach: (1) a technical motion for judgment of acquittal under Rule 29 (a) M.R.Crim.P., for inadequacy of the evidence to prove the offense as such and (2) a separate and independent request to the presiding Justice—acting as a fact-finder not only as to essential elements of the crime but also as to factors delineating enhancement of punishment, as per State v. Ferris, Me., 249 A.2d 523 (1969) and State v. Wheeler, Me., 252 A.2d 455 (1969)—that on the evidence he must find the offense to have been committed in the daytime and not in the nighttime.

Finally, even if by operation of the principle of State v. Day, Me., 293 A.2d 331 (1972)—that prejudicial error in the trial proceedings relating to factors affecting the grade or degree of the offense in terms of the severity of punishment requires that

a new trial be granted,—here, defendant never moved for a new trial.[1]

Defendant has, therefore, failed appropriately to preserve for appellate review the question whether the evidence was adequate to warrant the finding that the burglary at the Rome Elementary School had occurred in the nighttime.

■ Yet, here, jury trial had been waived and the Court had become both the finder of the facts and the source of governing law; and the Court had found that the offense charged had been committed in the nighttime, thereby to justify imposition of punishment within the more severe penalty category. This finding by the Court provides clear indication that the Court was satisfied that there was sufficient evidence to support a conclusion that the offense had occurred in the nighttime and, therefore, any efforts which counsel might have specifically exerted at the trial level to achieve a ruling from the Court that the evidence was legally insufficient in this respect would have been unavailing. Furthermore, this Court has not heretofore explicitly dealt with the scope of a motion for judgment of acquittal in specific relation to the distinction between the essential elements of the *offense, as defined* and such factors as affect only the enhance-

ment of punishment—insofar as defendant is entitled under *Ferris,* supra, and *Wheeler,* supra, to have the latter decided by the same fact-finding tribunal which defendant may select to adjudicate guilt or innocence of the offense itself.

■ For these special reasons, in the present instance and with the caveat that our action in these unique circumstances affords no precedent for the future, we shall consider defendant's contention on appeal.[2]

We find defendant's claim unacceptable on its merits. Defendant relies on evidence that all persons had left the Rome Elementary School by approximately 3:15 in the afternoon of September 22, 1971. On this basis, defendant argues that since he was found in possession of the goods *stolen from the Rome Elementary School* between 1:00 and 2:00 a. m. in the morning of September 23, 1971, the evidence fails to exclude as a reasonable hypothesis (and, therefore, is insufficient to establish beyond a reasonable doubt) that the breaking and entering into the school had occurred during the daytime of September 22, after 3:15 p. m.

The weakness in defendant's position is that it ignores other aspects of the evidence showing that defendant was found at

---

1. Even though under Rule 29(b) M.R. Crim.P., a motion for new trial, filed after verdict or the discharge of the jury " . . . shall be deemed to include a motion for judgment of acquittal as an alternative", it must be kept in mind, to avoid confusion in the present context, that the converse proposition is not correct. As the commentary to Rule 33 M. R.Crim.P., in Glassman, Maine Practice, Rules of Criminal Procedure, explains: "Under the rules, a motion for a new trial includes as an alternative a motion for judgment of acquittal [Rule 29(b)]; however, a motion for a judgment of acquittal does not include as an alternative a motion for a new trial." (§ 33.1, at p. 270)

2. We entertain the question even though it remains unclear that defendant suffered

prejudice from error, if any, in the finding that the offense had been committed in the nighttime. Here, the sentence actually imposed on the defendant was within the range authorized for the lesser degree of severity. Further, as distinguished from the situation in State v. Day, supra, in which the factors affecting the severity of punishment differentiated a felony from a misdemeanor, here, all of the ranges of punishment delimit the offense as a felony; no misdemeanor aspect can be involved. In some situations the felony-misdemeanor distinction might involve collateral prejudice to the defendant—as, for example, that a felony conviction might be used to impeach him as a witness in another proceeding whereas the conviction of a misdemeanor often may not be utilized for such purpose.

approximately two o'clock in the morning of September 23, in close proximity to the school (seven miles from it) on a road normally used to go from the school to the municipality of Oakland, and with cartons of food in his possession previously stolen from the freezer but still having a "frosted" appearance. That the cartons of food taken from the school freezer sometime after 3:15 p. m. on September 22, 1971 were thus still "frosted" when found in the possession of defendant inside an automobile at approximately two o'clock on the morning of the 23rd of September—September being a month in which unusually cold outdoor temperatures are uncommon —justifies a fact-finding inference that such foods were in a frozen condition at least as recently as during the hours of darkness on the night of September 22, 1971.

We need not presently be concerned with whether the ultimate burden of proof of facts upon which severity of punishment depends, as distinguished from those material to essential elements of the offense itself, may constitutionally be reposed upon the defendant rather than the State (State v. Wilbur, Me., 278 A.2d 139 (1971)) or whether if placed on the State, the quantum of proof is to be "beyond a reasonable doubt" rather than by "a fair preponderance of the evidence" (but see: State v. Ferris, supra). Here, we may assume, arguendo, that it was the State's burden to prove beyond a reasonable doubt that it was "nighttime" when defendant had committed the offense. Even on such hypothesis, in light of the foregoing evidence warranting a conclusion beyond a reasonable doubt that the cartons of food (stolen from the freezer of the Rome Elementary School) were still in frozen condition during the nighttime of September 22nd, it would follow as a permissible conclusion beyond a reasonable doubt that defendant had removed them from the Rome Elementary School freezer not earlier than during the nighttime of September 22, 1971 and,

therefore, defendant committed the offense in the "nighttime."

The entry is:

Appeal denied.

All Justices concurring.