DELAHANTY, Justice.
By petitions initiating juvenile proceedings, two youths aged thirteen and fourteen years were alleged to have willfully and maliciously wounded and maimed a ten-month-old dog by pouring gasoline on the rear part of the animal’s body and setting him on fire. A hearing was held before the District Court, District VII, sitting as a Juvenile Court, where both boys were found to be juvenile offenders and sentenced to the Boys Training Center. Appeals were taken to the Superior Court, Kennebec County, where, after hearing, the Court affirmed the lower court decision. It is from this Superior Court ruling that the present appeals are taken.
The acts alleged in the juvenile petition correctly state an offense under 17 M.R.S.A. § 1092 for maliciously injuring a domestic animal.
Prior to the Superior Court hearing, Defendants sought to dismiss the petitions for error in the pleadings, as the alleged facts could have charged a violation of 17 M.R.S.A. § 1091 (acts of cruelty to animals) as well as of § 1092. Asserting that the alleged acts could have covered both statutory offenses, Defendants claimed lack of notice of the specific statutory section relied upon by the State and a potential danger of being placed in double jeopardy.
Although no specific ruling on this motion appears in the record before us, the Superior Court’s subsequent affirmance of the Juvenile Court decision denied the motion by necessary implication. The Appellants have not briefed this issue on appeal, and such omission is considered by this Court as a waiver of the claimed error. Walker v. State, Me., 315 A.2d 855 (1974); State v. Campell, Me., 314 A.2d 398 (1974); State v. Harriman, Me., 259 A.2d 752 (1969).
It is clear from the statutory caption of the petitions and from the language describing the alleged acts that the State elected to prosecute for an offense under 17 M.R.S.A. § 1092. The 'fact that the circumstances under which this offense was committed might render it punishable under an alternative statute, as well as under the named statute, creates no flaw in the petition. People v. Pronger, 48 Ill.App.2d 477, 199 N.E.2d 239 (1964); People v. Crosson, 30 Ill.App.2d 57, 173 N.E.2d 552 (1961); cf. Fuller v. State, Me., 282 A.2d 848 (1971).
The offense was charged in accordance with the language of the statute and with sufficient particularities as to the averments to apprise the accused of the specific offense with which they were charged. The petition was framed with sufficient certainty so that a judgment may be pleaded as a bar to any later prosecution for acts constituting the same offense. Cf. Burnett v. Commonwealth, 284 S.W.2d 654 (Ky.1955).
Even though 17 M.R.S.A. § 1092 relates exclusively to acts which are malicious in nature, the statute does differentiate as to punishment between those acts which are of a high and aggravated nature and those which are not. The lesser penalty involves only a misdemeanor, while the more severe penalty indicates a felony. Appellants as *888 sert that the juvenile petitions in the present case made no specific allegations as to aggravation. It is argued by the Appellants, however, that the severity of the sentence indicates the trial Judge concluded that the offense was aggravated, and that the Superior Court Justice similarly assumed the presence of aggravation in his review of the sentences passed. In light of the action taken by both Courts, Appellants maintain that failure to allege and prove the issue of aggravation denied them due process of law.
The issue of pleading and proving the matter of aggravation in criminal offenses was extensively discussed by this Court in State v. Ferris, Me., 249 A.2d 523 (1969). Our decision in Ferris established as a point of law that the element of aggravation is a significant enough factor in the ultimate disposition of a case that the defendant is constitutionally entitled to a jury determination of whether the offense committed was of a high and aggravated nature.[1] Ferris also entitled the defendant to an allegation of aggravation to inform him of what he has to meet at trial.
It is recognized that proof beyond a reasonable doubt is required as to all elements of an offense to support an adjudication of a child as a juvenile offender, just as such proof is required for a conviction of an adult offender. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Aggravation is not, however, an element of the substantive offense itself; it remains a separate factor for purposes of determining punishment.[2]
There is no need to allege or prove the high and aggravated nature of an offense where the sentence would be unaffected thereby. As an issue going only to punishment, the question of aggravation plays no role in juvenile sentencing. All commitments to the Boys Training Center and Stevens Training Center are for the term of the juvenile’s minority, unless sooner discharged by the superintendent of the institution. 15 M.R.S.A. § 2714. To the extent that a finding of aggravation in a criminal trial allows for longer statutorily prescribed periods of in-carcaration for adult offenders, it has no parallel function in a juvenile proceeding, where all commitments are for the same term.[3] The juvenile case also differs from the ordinary criminal trial in that the adjudication results in no classification of the offender between a felon and a misde-meanant. A specific purpose of the juvenile procedure is to protect juveniles from acquiring the stigma or legal status that attends a criminal record. 15 M.R.S.A. §§ 2501, 2502(1), 2606.
There is, therefore, no merit to the Appellant’s claim that the severity of the Juvenile Court’s disposition of the proceeding carried a necessary inference of a finding of aggravation. Such a finding would have no effect on the commitment *889 order of the Court, as all commitments are for an indeterminate period (limited only by the juvenile reaching the age of majority).
The decision to commit the juveniles to the Boys Training Center does not of itself reflect a finding of aggravation. In criminal offenses, statutory reference to the aggravated manner in which a crime was committed allows for extended periods of incarceration. It does not create a differing standard by which the court is to determine if there is justification for incarceration in the first instance; it only affects the length of such incarceration. Thus, no inference of aggravation may be drawn from the decision of the Juvenile Court to commit the youths to the care and custody of the Boys Training Center. More importantly, the commitment of the juveniles to the Center is not a form of punishment. The purpose of the juvenile proceeding and any disposition that may flow from it is for “aid, encouragement and guidance” to young persons. See 15 M.R.S.A. § 2501 (statement of purpose of juvenile offender provisions).
A juvenile court judge considers all aspects of a case in making his determination as to both delinquency and disposition, with a view toward treatment alternatives available to him. Past conduct, family background, conditions of environment are all essential factors relevant to commitment. See President’s Comm’n on Law Enforcement and Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime 35 (1967). The purpose of commitment to the Boys Training Center is to provide a rehabilitative atmosphere consistent with personal development and social responsibility.
Given that the purpose of juvenile commitment to the Boys Training Center is nonpunitive and differs in justification and nature from adult criminal incarceration, it is an incorrect assumption by Appellants that the decision to commit was based upon a finding of aggravation, a factor which in criminal statutes goes exclusively to the measure of punishment. The decision of the Juvenile Court Judge in the present case to commit the delinquent youths to a state insitution for boys was prompted by a review of their needs as brought to the attention of the Court by the commission of illegal acts on their part. The courts do not rely on criminal standards (such as aggravation) either directly or by analogy in determining the most appropriate method of treatment in the rehabilitation of juvenile offenders.[6]
The Appellants further claim that the issue of aggravation prevented them from receiving a meaningful and effective review of their case on appeal to the Superior Court. The right of appeal in juvenile cases has been granted in Maine by statute. 15 M.R.S.A. § 2661 et seq. The standard of review in such appeals is established by 15 M.R.S.A. § 2665:
The Superior Court, on an appeal from the judgment of the juvenile court, may affirm the adjudication of commission of a juvenile offense and any order based thereon; or the Superior Court may reverse said judgment and order the proceedings dismissed; or, if the Superior Court should find that the juvenile court abused its discretion in disposing of the case, the Superior Court may affirm the adjudication of commission of a juvenile offense but modify any order thereon made by the juvenile court, in *890 which case the Superior Court shall have the same powers of disposition as are conferred on the juvenile court under section 2611, subsection 4.
On appeal, the Defendants, through counsel and with the consent of their guardians, specifically waived further hearing on the merits as far as the commission of a juvenile offense was concerned. The Superior Court Justice described, in his decision, the issue before his Court:
Therefore, the only question is whether or not a disposition other than that of commitment to the Boys Training Center should be made. I note that the Statute requires this Court to find that the Juvenile Court abused its discretion in disposing of the case if I am to order any other disposition.
Under § 2665, the “abuse of discretion” standard is the correct one where the disposition only is being appealed. ‘The exact nature of this guide for judicial review has not been established in this context by this Court. Admittedly, the term does not lend itself to definitive interpretation.
There is no exact measure of what constitutes abuse of discretion. It is more than the substitution of the judgment of one tribunal for that of another. Judicial discretion is governed by the situation and circumstances affecting each individual case. “Even where an appellate court has power to review the exercise of such discretion, the inquiry is confined to whether such situation and circumstances clearly show an abuse of discretion, that is, arbitrary action not justifiable in view of such situation and circumstances.” N.L.R.B. v. Guernsey-Muskingum Electric Co-op., Inc., 285 F.2d 8, 11 (6th Cir. 1960); cf. In re Josephson, 218 F.2d 174, 182 (1st Cir. 1954).
The commentary is equally applicable where the standard is applied to a review of the determination of a penalty. Brown v. Gordon, 240 Cal.App.2d 659, 49 Cal.Rptr. 901 (1966). It was the responsibility of the Superior Court Justice to decide if the commitment to the Boys Training Center by the Juvenile Court was an unreasonable, unconscionable and arbitrary response to the offens.e committed and the social needs of the youths, and was made without proper consideration of the facts before the Court. The Superior Court Justice fulfilled his responsibility and determined that the Juvenile Court was correct, and acting within its discretion, in committing the boys to the Training Center.
Appellants claim that the appellate review of the commitment orders fell short of due process because of an incorrect assumption on the part of the Superior Court Justice that a finding of aggravation either had been made or could have been made on the facts by the Juvenile Court. The claim arises out of the statement in the Superior Court decision that “ . . . the offense committed was a felony for which an adult could be sentenced to State Prison.” [7] Appellants argue that an assumption of aggravation (an element necessary for a felony conviction), where none in fact was alleged or proven, was wrong as a matter of law and weighted the Court’s consideration of the severity of the dispositions.
A judge may comment on the nature of an offense and describe the possible effect *891 of such conduct were the offender an adult. Indeed, such commentary is appropriate in light of the reason for the Maine juvenile delinquency provisions. The comment in the Justice's decision was explicative of the possible result if the willful and malicious acts described in the juvenile petition had been performed by an adult. His discussion went to the nature of the offense and not to the sufficiency of the petitions. Dispute as to the merits of the case had already been waived by Defendants. The review by the Superior Court Justice was proper as to the law and facts of this case2 and assumed no facts separate from those which supported the Juvenile Court order.
Appellant’s final contention bears upon the type of hearing granted by the Superior Court in appeals of juvenile cases. 15 M.R.S.A. § 2664 sets out the nature of such appeals. The section provides in part:
The hearings in the Superior Court on an appeal from a juvenile court adjudication shall be informal, and all findings whether of fact or otherwise, shall be made by the Superior Court sitting without a jury.
Appellants maintain that the reference to findings of fact contemplates a de novo hearing at the first appellate level, but they also contend that such a new trial is inconsistent with the § 2665 standard for review, which is based upon “abuse of discretion.”
The appellate hearing before the Superior Court allows for a full review of all evidence pertinent to the adjudication and disposition of the juvenile case. The Superior Court justice may make independent findings as to facts and law on all evidence presented before him. This right and function is contemplated by § 2664 and is necessary to an effective review, as no complete record and transcript are kept at the initial Juvenile Court proceedings. An independent evidentiary hearing encourages a careful reexamination of the alleged conduct and surrounding circumstances, and is consistent with the concept of informality at both the Juvenile Court and Superior Court levels.
As to the commission of the juvenile offense itself, the Superior Court “may affirm the adjudication of commission of a juvenile offense and any order based thereon; or the Superior Court may reverse said judgment and order the proceedings dismissed . . . . ” § 2665. The statute provides for a de novo determination as to the commission of the offense. In the de novo proceeding, all evidence is heard anew and the probative effect thereof is determined by the appellate court independent of any prior proceeding. The Superior Court justice sitting without a jury makes an entirely new judgment whether the juvenile committed the offense charged.
If the justice should find that no offense was committed by the juvenile, he reverses the judgment of the Juvenile Court and dismisses the proceedings. If, however, he affirms the lower court adjudication of the commission of a juvenile offense, he is presented with two options. The first is to affirm the order based on the Juvenile Court adjudication. The authority to do so is found in the quoted language from § 2665 above. The other option is to modify the order of the lower court. As that decision is based not on a disagreement as to the commission of the offense but rather on differing value judgments as to the proper rehabilitative response, any order to modify the disposition of the case may only be made if the Juvenile Court abused its discretion in disposing of the case.
. . .if the Superior Court should find that the juvenile court abused its discretion in disposing of the case, the Superior Court may affirm the adjudication of commission of a juvenile offense but modify any order thereon made by the juvenile court, in which case the Superior Court shall have the same powers of disposition as are conferred on the *892 juvenile court under section 2611, subsection 4. 15 M.R.S.A. § 2665.
In determining the question of whether discretion was abused, the Superior Court may consider anew all evidence relevant to the disposition.
The legislature has indicated by its enactments in §§ 2664 and 2665 that a true de novo hearing is granted to review the primary question of the responsibility of the infant for the acts alleged in the petition. On that issue, no cognizance is given to the Juvenile Court decision. As to the review of the disposition alone, however, the legislature has limited modification to those situations where, after hearing any evidence offered by either party, the court finds that there had been an abuse of discretion — a standard discussed previously in this opinion. This Court finds no fault or inconsistency with this approach to review of juvenile cases.
In the subject case, the Appellants waived on appeal the issue of the adjudication of the commission of a juvenile offense. Their appeal related solely to the commitment of the youths to the Boys Training Center. On this matter, the Court allowed a full hearing with an unrestricted opportunity for defense counsel to present any evidence affecting disposition, either as to the circumstances surrounding the offense itself or to factors relative to the boys’ characters.
The record of the Superior Court hearing shows that the Justice below placed no boundaries on the evidence he would take into consideration. Defense counsel presented no new evidence indicating mitigating circumstances that would lessen the seriousness of the offense committed. All evidence presented to the Court went to the character of the youths and to their potential for receiving corrective treatment in the home environment. The Superior Court Justice gave due consideration to. the letters of recommendation and to the report of examinations of the juveniles by the Kennebec Valley Mental Health Clinic. It was only after careful review of this material, that the Court concluded that the decision of the Juvenile Court Judge to commit the youths to the care and custody of the Boys Training Center did, in fact, present the best opportunity to prevent such flagrant misconduct in the future. We find no error.
The entry shall be:
Appeals denied.
All Justices concurring.

. Jury trials are not constitutionally required in juvenile cases. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

. Recently in State v. Heald, Me., 307 A.2d 188 (1973), Mr. Justice Archibald gave incidental discussion to the fact that aggravation is an independent finding by the jury separate from substantive elements of the offense itself.
Under the holding in State v. Ferris, 249 A.2d 523 (Me.1969), Maine juries are now required, in effect, to make a special finding in assault and battery cases where aggravation is alleged since the element of aggravation is no part of the substantive offense, reaching only the question of punishment. This result was mandated for the constitutional reasons enunciated in Duncan, Appellant v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), applying to the states under the Fourteenth Amendment the Sixth Amendment jury trial provisions. Id. at 193 n. 6.

. As an alternative to commitment of the juvenile to a state institution, the Juvenile Court may require payment of a fine. 15 M.R.S.A. § 2611(4) (H). As the fine imposed must be within the same limits as that established for the criminal offense, a finding of aggravation by the Juvenile Court would affect the maximum permissible amount of the penalty.

. The rehabilitative philosophy underlying juvenile commitments has been subject to sharp debate by social scientists and lawyers alike. A criticism of current practices in juvenile sentencing may be found in Chase, Schemes and Visions: A Suggested Revision of Juvenile Sentencing, 51 Texas L.Rev. 673 (1973). While accepting the limitations of any effort to improve the human condition, this Court continues to endorse the concept of special treatment of juvenile offenders. Indeed, it is our fear that “should deviant children he diverted to the criminal processes, great social harm would result.” S**** S**** v. State, Me., 299 A.2d 560, 570 (1973).

. The context of these remarks is found in the following paragraph from the Superior Court decision:
There are many young girls at the Stevens School in Hallowell and many young hoys at the Boys Training Center in Portland who have committed no offense for which an adult could be punished. In these two eases, however, the offense committed was a felony for which an adult could be sentenced to State Prison. The State supports the Boys Training Center for the purpose of rehabilitation. If the Boys Training Center has nothing to offer these two juveniles under the unusual circumstances of these cases, then it would appear to me that the Boys Training Center has nothing to offer anyone.