Minnie GARLAND

v.

Louis G. VIGUE.

Supreme Judicial Court of Maine.

Dec. 4, 1967.

Bradford H. Hutchins, Waterville, for plaintiff.

Albert L. Bernier, Lester T. Jolovitz, Waterville, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, and DUFRESNE, JJ.

TAPLEY, Justice.

On appeal. The questions here involved are factual. The case was heard by a single Justice of the Superior Court. The "clearly erroneous" Rule is applicable.

"* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *." Rule 52(a), Rules of Civil Procedure.

Harriman v. Spaulding, 156 Me. 440, 165 A.2d 47.

Plaintiff in the action demands of the defendant certain real estate, with its appurtenances, in the Town of Winslow, County of Kennebec and State of Maine, saying that she was seized in fee simple of the premises described in the complaint within twenty years last past and that defendant has disseized her of the premises and withholds the same from her. Plaintiff also seeks damages for alleged acts of trespass on the part of the defendant who plaintiff has alleged has destroyed and carried away trees, tim-

ber, wood, etc., from the real estate of the plaintiff. Both parties to the action claim by grant and devise and not by adverse possession. The issue is, which one of the parties has the better title to property involved in the action? The defendant-appellant has abandoned Nos. 6, 7 and 8 of her points of appeal. These points are:

"6. The Court's finding that the location of the 'Horn' or 'Gilman 50-Acre Lot,' and the 'Spring' or 'Wood 50-Acre Lot' were accurately located on the surface of the earth, there being no evidence to the contrary, was clearly erroneous.

"7. The Court's finding that the Defendant-Appellant's engineer, Mr. Carey, testified that he did not dispute the accuracy of the Smith determination of the Drummond line, is clearly erroneous.

"8. The Court erred in substaining (sic) the objection of counsel for Plaintiff-Appellee, on Page 166, 167, of the transcript, precluding Chester Garland from testifying to observations relating to a corner of property involved."

The prime and most important witnesses are the civil engineers who testified for the plaintiff and defendant respectively, Mr. Sherman K. Smith, witnessing for the plaintiff, and Mr. Richard K. Carey, for the defendant. There is much documentary evidence in the case consisting of deeds, plans and abstracts of title.

Plaintiff owns one parcel of land containing about 40 acres in an area West of Pattee Pond. Directly to the South of plaintiff's land defendant owns what was originally several pieces of land but only the northernmost parcel containing approximately 45 acres is in issue. Determination of the location of plaintiff's southerly line and the defendant's northerly line is decisive of the case. The "Settlers Line," as indicated on plaintiff's Exhibit No. 11, is agreed by the parties as being the general westerly boundary of the lots involved.

Mr. Smith testified that he had been performing his work as a civil engineer around the area involving these Pattee Pond lots for about 2½ years making surveys of the Garland and Paine lots, including land lying westerly of the pond and extending in a westerly direction as far as the Garland Road. He not only established the boundary lines of the Garland and Vigue property but the boundary lines of the lots of Clyde Russell, Wendall Russell and Benjamin Wood, all of which parcels lie immediately to the West of the disputed area. There is an exhibit in the case which is an engineering field notebook used by Harry E. Green, a Civil Engineer, containing a sketch of the Paine property which lies contiguous to the northern line of the Garland property. This survey was done in 1953. Mr. Smith first saw this book after his initial survey and in comparison he found the Green survey and his remarkably close in establishing the North line of the Garland property which would be the South line of the Paine property as Green surveyed it in 1953. Mr. Smith carried on his survey independently of the Green survey but the results of both surveys were remarkably close. Mr. Smith described in detail the procedure he followed which resulted in the determination of the southern boundary line of Garland and the northerly line of Vigue. In running the lines Mr. Smith was assisted by one Delbert Ellis, a gentleman of 76 years of age, who showed Mr. Smith certain monuments between Drummond's and a lot owned by his father which became important in determining the southern line of the Garland lot. The record demonstrates in detail the procedures Mr. Smith took in arriving at the results of his survey which is before the court in the form of a plan made by him, identified as plaintiff's "Exhibit 11" and included in this opinion as "Appendix A." He was assisted in his survey by David Garland and Walter Russell as they testified in their depositions.

The record reflects the fact that defendant's engineering witness, Richard K. Carey, four or five weeks before the hearing was engaged by defense counsel to survey and map the area around Pattee Pond in-

volved in these proceedings. Mr. Carey testified that he agreed with Mr. Smith as to the Drummond line; that it was properly found according to the deed of Miller to Drummond, et al., Book 326, Page 454; that he made no determination of the North line of the Garland property which would be the South line of Paine's property. He further testified, according to his survey, no part of the Minnie Garland property would abut the Drummond property even though the deed from David Garland to William S. Garland, Book 238, Page 170, Kennebec Registry of Deeds, the deed which is the source of the plaintiff's title, contained a portion of the Drummond land as one of the bounds set forth in the deed. According to Mr. Carey's survey he gives the Garland property an area of 30 acres, while the deed calls for 40 acres. At this point it is important to note that according to the Smith survey Garland has 39.5 acres which obviously is the difference of one-half an acre of the 40 acres, more or less, called for in the deed.

█ The credibility and evidentiary value of a witness' testimony is for the presiding Justice to determine. Viele et al. v. Curtis, 116 Me. 328, 101 A. 966. Obviously the Justice below was persuaded by the testimony of Mr. Smith which led him to his final conclusion as to the establishment of the southern boundary of the Garland property which became the northern boundary of the Vigue property. This dividing line between the properties is shown on plaintiff's Exhibit 11 and designated "A–B." A review and study of the record and all the exhibits warrant the findings of the Justice below.

█ The defendant-appellant in his points of appeal stated that the court in his findings was clearly erroneous when he found that the defendant-appellant removed soft and hardwood trees from the plaintiff-appellee's property. The plaintiff alleges in his complaint that he is entitled to damages for the cutting down, destroying and carrying away by the defendant, his agents or servants, trees, timber and wood which were on the plaintiff's property. There is testimony that there was an area of approximately 400 feet by 20 feet that showed evidence of cutting of trees and the opinion given that those trees cut and removed were of the value of between $50.00 and $75.00. This is the substance of the only testimony produced to prove that the defendant, Louis G. Vigue, or his agents or servants, did the cutting and removing of the trees. Sufficient evidence is lacking to sustain the findings of the Justice below of $75.00 damages.

The entry will be:

Appeal denied as to the merits.

Appeal sustained as to damages.

Case remanded to Superior Court for a hearing on damages unless plaintiff, within 30 days of filing of mandate, files a remittitur in the amount of $75.00.

MARDEN, J., did not sit.

RUDMAN, J., sat at argument but retired before the opinion was adopted.

APPENDIX A