**STATE of Maine**

**v.**

**Joseph M. GLEASON et al.**

Supreme Judicial Court of Maine.

June 24, 1976.

3. This, despite the concession which the State makes in its brief concerning variance.

Michael E. Povich, Dist. Atty., James E. Patterson, Asst. Dist. Atty., Ellsworth, for plaintiff.

Bernard Staples, Bar Harbor, Joel A. Dearborn, Brewer, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

After a trial, jury waived, in the Superior Court (Hancock County) defendants Joseph M. Gleason, April Sanderson and Leslie G. Rich were found guilty, as charged by indictment, of having broken and entered a building in which valuable things were kept and having committed larceny therein (in violation of 17 M.R.S.A. § 2103).

In their appeals from the judgments of conviction defendants assert that the presiding Justice committed reversible error by particular evidentiary rulings and by denying defendants' motions for judgment of acquittal and for a new trial.

We deny the appeals.

The evidence warranted the following findings of fact.

On October 2, 1974, Mrs. Yvonne Hodgdon, a custodian of the Tremont Consolidated School in Tremont, Maine, prior to her departure from the premises at the usual hour of 8:00 p. m., had secured the doors and windows of the school building. At 9:00 p. m., Officer Leonard Higgins of the Tremont Police checked the building and found nothing amiss.

Responding to a telephone call, Officer Higgins returned to the school at 6:30 a. m. the next morning and there met the two school cooks and the two school custodians. The officer observed that the glass portion of a door located at the rear of the school had been smashed and the lock pushed from its hasp. The officer entered the building through the broken door. He noted that the storage room adjacent to the furnace room was in disarray, the door to a wire mesh "cage" area was broken and the shelves within the "cage" were partially empty. A large chest-type freezer stood open and empty, and articles of frozen food were scattered about the floor. The school cooks, Mrs. Black and Mrs. Murphy, furnished to Officer Higgins a list of food items they believed missing.

A party had been held in the evening of October 2 at the home of Kirk Clark, in Southwest Harbor, Maine. One Clyde Porter had arrived at Clark's house approximately at 9:00 p. m. He was accompanied by defendant Leslie G. Rich and defendant April Sanderson's sister, Deede Sanderson. During the evening Porter consumed six or seven bottles of beer as well as some whiskey and was "feeling good."

At about 3:30 a. m. of October 3 Porter, defendant Rich and Deede Sanderson left the Clark house in Clark's automobile and drove to Deede Sanderson's apartment. There, they met defendants April Sanderson and Joseph Gleason. The five proceeded to a laundromat, spent some time and then left, with defendant Rich operating the automobile.

Porter fell asleep. When he was later awakened by the sound of the crash of "something metal", he discovered that he and Deede Sanderson were alone in the automobile parked behind the Tremont Grammar School. Porter could see figures moving in the darkness. After a few moments the back door of the car was opened, and the three defendants began throwing food upon the back seat. Porter saw them place

" . . . a big chunk of beef, . . . a big jar of mayonnaise, and . . . some boxes of hot dogs"

on the back seat of the car and heard Gleason exclaim, "Oh, Boy, there's hot dogs."

Shortly thereafter, Porter again fell asleep. When he awoke, he was alone in Kirk Clark's car which was parked outside Clark's house. Porter went into the house and fell asleep on a sofa.

At 5:45 a. m., October 3, Kirk Clark awoke at his home. He soon went to the kitchen and there saw the three defendants and Deede Sanderson eating hot dogs. Several dozen hot dogs and two or three loaves of bread were scattered about the kitchen. Clark proceeded to his car. He found on the back seat a quantity of food including frozen meat and butter, some canned goods and bread. He returned to the house and asked the persons in the kitchen if they knew where the food had come from. Defendant Rich responded that it had come from the Tremont School. Clark then placed the food in three boxes, drove to a place on the Fernald Point Road and there threw the boxes of food into the woods.

During the day of October 3, and the following day, Clark was approached several times by Officer Jeffrey Porter (brother of Clyde Porter) of the Southwest Harbor Police. As a result of his conversations with Officer Porter, on the evening of October 4, 1974 Clark accompanied Porter to the location on the Fernald Point Road where he had disposed of the food. Officer Porter there recovered three boxes of food containing hamburg, butter, beef, tomato soup, salad dressing and tomatoes. Officer Porter delivered these food items to Officer Higgins who transported them to the Tremont School and there photographed them.

## I. Issues Relating to the Admission of Evidence

Defendants claim that the presiding Justice committed reversible error in admitting as evidence at the trial (1) the photographs taken by Officer Higgins and (2) the statements of defendants Gleason and Rich.

## I–A. The Photographic Evidence

The asserted errors in the admission of the photographs are (1) violation of the best evidence rule and (2) the immateriality of the subject-matter of the photographs, i. e., various food items.

We need not decide the merits of these contentions.

■ The State introduced the photographs for the purpose of connecting the defendants with the items stolen from the Tremont School. For such purpose, the photographs were merely cumulative since the testimony of Clyde Porter, Kirk Clark, Jeffrey Porter and Leonard Higgins, all admitted without objection, had abundantly established that the food Clyde Porter observed in the possession of the defendants had come from the Tremont School. Thus, error, if any, in the admission of the photographs into evidence was plainly harmless.

## I–B. The Admissions of Defendants Gleason and Rich

Defendants Sanderson and Rich maintain that the use at trial of an extra-judicial statement attributed to their co-defendant, Gleason, violated their federal constitutional right to confront the witnesses against them. Also presented to us is a constitutional issue as to confrontation arising from the use at trial of an extrajudicial statement attributed to the defendant Rich.[1]

Defendants' claim is that each of these extra-judicial statements made by one de-

---

1. As indicated ante, Clyde Porter testified that when Gleason got into the car behind the Tremont School, Gleason exclaimed, "Oh, Boy, there's hot dogs." Further, Kirk Clark testified: (1) when he discovered food on the back seat of his car at 5:45 a. m. on October 3, 1974, he returned to the kitchen of his house and asked the three defendants and Deede Sanderson if they knew where it had come from; and (2) defendant Rich told Clark the food had come from the Tremont School.

fendant (1) inculpated the other defendants (2) was not subject to cross-examination since none of the defendants testified at the trial and (3) was heard in full by the fact-finder. Hence, say defendants, *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) mandates that the convictions be reversed.

The contention is erroneous. The foundational holding of *Bruton* is that the Confrontation Clause of the Sixth Amendment to the Constitution of the United States, binding on the States as incorporated in the federal Fourteenth Amendment, requires that a criminal defendant be afforded an opportunity to cross-examine with regard to evidence inculpating him.[2] Applying this principle, the Court in *Bruton* further decided that: (1) notwithstanding a Court instruction to a jury that it must not consider an extra-judicial confession of co-defendant A inculpating co-defendant B in assessing the guilt or innocence of co-defendant B, undue risk remains that the jury will nevertheless use A's inculpation of B against B; and (2) such approach by the jury would deny opportunity to co-defendant B to confront a "witness" against him, i. e., A's extra-judicial confession inculpating B.

■ In express language *Bruton* also made plain, however, that were it an established fact

" . . . *that the jury* [fact-finder] *disregarded the reference to the code-fendant, no question would arise under the Confrontation Clause,* because by hypothesis the case is treated as if the confessor made no statement inculpating the nonconfessor." (p. 126 of 391 U.S., p. 1622 of 88 S.Ct.) (emphasis supplied)

Thus, if it is the case that the fact-finder has not made use of co-defendant A's ex-

tra-judicial statement inculpating co-defendant B in determining the guilt or innocence of B, the Confrontation Clause issue is absent.

In the instant case defendants were tried jury-waived, the fact-finder being the presiding Justice. In ruling on the admissibility as evidence of the statements in question, the presiding Justice treated each as an *admission* by the declarant. On this basis, under the Maine law of evidence each statement was evidence properly to be considered only against the declarant and not against the other non-declarant defendants.[3]

It is well settled that a

"court learned in the law is presumed to render its decision on the evidence in the case which is legally admissible even though inadmissible testimony be received. This presumption must be rebutted before the reception of such evidence by the court will be deemed prejudicial." *Lipman Bros. Inc. v. Hartford Accident & Indemnity Co.*, 149 Me. 199, 215, 100 A.2d 246, 255 (1953)

■ Defendants do not point to any circumstances which here tend to rebut this presumption. Hence, we must proceed by taking as the facts that the presiding Justice followed the rules of evidence, disregarding defendant Rich's statement while he was determining the guilt or innocence of defendants Gleason and Sanderson and likewise giving no consideration to defendant Gleason's statement while he was determining the guilt or innocence of Sanderson and Rich. Accordingly, defendants' constitutional rights of confrontation, within the delineation of *Bruton*, supra, were not here violated.[4]

2. The full sweep of the holding in *Bruton* is far from clear. We deal here only with the effect of *Bruton* and its progeny on rules relating to inculpatory statements by co-defendants.

3. *Call v. Pike*, 68 Me. 217 (1878). See also: Rule 801(d)(2) M.R.Evid.

4. See: *Cockrell v. Oberhauser*, 413 F.2d 256 (9th Cir. 1969) cert. den. sub nom. *Cockrell v. Carter*, 397 U.S. 994, 90 S.Ct. 1130, 25 L.Ed.2d 401 (1970) for a similar analysis of this issue.

## II. Sufficiency of the Evidence

The remaining issues on appeal concern the denial of defendants' motions for judgment of acquittal and for new trial. Defendants challenge (a) the sufficiency of the proof of ownership of the building broken and the goods taken, (b) the credibility of the witnesses Clyde Porter and Kirk Clark and (c) the resort to the inference arising from unexplained possession of recently stolen goods.

### II–A. Evidence of Ownership

Defendants were indicted for breaking and entering

"the Tremont Consolidated Grammar School of the Town of Tremont, Maine, . . . and therein . . . with intent to deprive permanently the Town of Tremont, Maine, . . . of its property . . . ."

taking and carrying away certain foodstuffs. Defendants claim that the evidence introduced at trial failed to prove either that the Town of Tremont owns, or has a property interest in, the Tremont Consolidated Grammar School, or that it owned or had a property interest in the food taken from the building. We disagree.

■ From the evidence the presiding Justice was warranted in finding as facts that (1) the building broken and entered is a school located in the Town of Tremont, Maine; (2) two of the witnesses, Clyde and Jeffrey Porter, had attended the school as children, transferring from it when the family moved to Southwest Har-

bor, Maine; (3) the Town maintains a "school lunch account"; (4) the cooks at the Tremont School are paid by funds from this account; (5) the Town pays the salary of the school janitor. These facts justified the further conclusion by the presiding Justice that since the Town finances the daily maintenance of the building and at least partially underwrites the lunch program, it had a property interest in the building.

■ It was further established at trial that all of the food stored in the school storage area had either been purchased with school funds or had been donated to the school by the federal government. Although the evidence did not directly establish that the food was purchased with funds provided by the Town (from the "school lunch account"),[5] it adequately indicated an interest of the Town in the lunch program sufficient, with the evidence taken as a whole, to establish a property interest of the Town in the food stolen.[6]

### II–B. Credibility

Defendants assert that their appeal should be sustained because the evidence against them is primarily derived from the testimony of Clyde Porter and Kirk Clark both of whom admitted to having drunk a quantity of liquor on the evening of October 2, 1974.

■ Questions of credibility are for the fact-finder. *Garland v. Vigue,* Me., 236 A.2d 324 (1967). The presiding Justice's conclusions here are not clearly erroneous.

---

5. The evidence indicated only (a) that the lunch account existed, (b) that the school cooks were paid from the lunch account, and (c) that the cooks purchased food with funds provided by the school.

6. Defendant Gleason argues that even if the testimony of the janitor and cook was sufficient to establish a property interest of the Town in the school and the food, the appeal must still be sustained since the testimony of an employee may not be the basis on which

his employer's right of possession is established. We reject this claim. It is based upon an erroneous interpretation of *State v. Oliver,* Me., 225 A.2d 398 (1967). While it is true that in *Oliver* the appeal was sustained because of error in the admission of testimony of the caretaker of a certain cottage concerning his employer's ownership, the error consisted in allowing the caretaker to testify to a legal conclusion. His status as an employee was not the operative factor disqualifying the testimony.

## II–C.   Inferences Arising from Possession of Stolen Goods

Defendants' final claim is that the inference of guilt of larceny arising from unexplained possession of recently stolen goods was improperly utilized in this case. Contention is made that such inference must be based on recent *exclusive* possession of the stolen goods, *State v. Mosher*, Me., 270 A.2d 451 (1970) and the exclusivity factor is missing here, say defendants, because the evidence shows that Kirk Clark was in possession of the goods at the time he concealed them.

▬▬   The argument is fallacious. The possession here crucial is the possession of the defendants *as related by the witness Clyde Porter*. His testimony places the goods *in the hands of the defendants* at a time between 3:30 a. m. and daylight on October 3, 1974—a time close to the time of the break and larceny at the Tremont School. The fact of defendants' possession of the goods as noted by Porter justifies an inference that defendants broke and entered the building and stole the goods.[7] That someone else *later* possessed the goods does not affect the justifiability of this inference.

▬▬   Defendants, however, advert to Clark's later possession of the food as the basis for an alternative argument concerning allegedly improper resort in this case to the inference arising from unexplained possession of recently stolen goods.

The later possession of the goods by Clark (and Jeffrey Porter and Officer Higgins) was used by the State to prove that the goods which had been placed in Kirk Clark's car by defendants were *stolen* goods, stolen from the Tremont School.

Defendants' contention is that for this purpose the evidence must be held inadequate since no one had remained with the goods at every instant from the time Clyde

Porter observed defendants with them until Officer Higgins matched them to his list and returned them to the Tremont School. Hence, argue defendants, the fact-finder would not be justified in concluding beyond a reasonable doubt that the food Kirk Clark found in his car was the same as that which defendants possessed in Clark's car a few hours earlier. This being so, say defendants, all of the testimony by Clark, Jeffrey Porter and Higgins was inadmissible because immaterial, and, hence, no inference of guilt may validly be drawn from defendants' possession of certain food items since they were not adequately shown to have been stolen from the Tremont School.

The argument fails. Clyde Porter saw certain food items placed in Kirk Clark's back seat after 3:30 a. m. on October 3. Clark found food items on the back seat of his car at 5:45 a. m. on October 3. He placed the items in three boxes, and hid them in the woods. Approximately thirty-six hours later, three boxes of food items were recovered from the same spot in the woods. The lists of items given by the various witnesses are not identical but all overlap. The totality of this evidence

> "yield[s] a confluence of circumstances sufficiently compelling to sustain, consistently with the requirements of proof beyond a reasonable doubt, the fact-finder's   .   .   .   [conclusion]   .   .   ."

that the food Clyde Porter observed in the possession of defendants was stolen from the Tremont School. *State v. Bickford*, Me., 308 A.2d 561, 565, 566 (1973)

The entry is:

Appeals denied.

All Justices concurring.

WEATHERBEE, J., sat at argument and participated in consultation, but died before the opinion was adopted.

---

7. This is true provided that the facts of the breaking and entering and of the larceny are supported by *independent* evidence. Here, such independent evidence existed through the testimony of Officer Higgins, Mrs. Hodgdon and Mrs. Murphy.